548 P.2d 442

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Enos Larry TRIVITT, Defendant-Appellant.**

**No. 10159.**

Supreme Court of New Mexico.

Feb. 17, 1976.

Chester H. Walter, Jr., Chief Public Defender, Bruce L. Herr, App. Defender, Santa Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., Warren O. F. Harris, Deputy Atty. Gen., F. Scott Mac-Gillivray, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

McMANUS, Justice.

This is a direct appeal from defendant's conviction of first degree murder and sentence of death. The case was tried to a jury in the District Court of the Eighth Judicial District, in Colfax County, on a change of venue from Union County, New Mexico.

Generally, the facts reflect that on the morning of September 5, 1973 the body of James L. Graves was discovered slain in the storeroom of his service station located approximately one mile southeast of Clayton, New Mexico. Shortly thereafter, as the result of a police radio dispatch, the defendant, Enos Larry Trivitt, and his traveling companion, Mary Alice Brown, were stopped as they drove through Dalhart, Texas. Both were arrested for the murder of Graves. Trivitt waived extradition and was turned over to Union County officials and returned to Clayton that morning.

A two-count indictment was returned by the grand jury of Union County on September 20, 1973. The trial of Trivitt was severed from that of his companion without objection. A motion for change of venue was also granted and the case was transferred to Colfax County as previously stated.

The two counts of the indictment read as follows:

1. That on or about the 5th day of September, 1973, in the County of Union, State of New Mexico, the said Enos Larry Trivitt and Mary Alice Brown did unlawfully kill and murder a human being, to-wit: James L. Graves, by stabbing him to death with a knife in the commission of a felony, to-wit: robbery.

2. That on or about the 5th day of September, 1973, in the County of Union, State of New Mexico, the said Enos Larry Trivitt and Mary Alice Brown did unlawfully commit larceny by stealing something of value, to-wit, over $100.00

in money, the property of another, to-wit, James L. Graves.

On January 3, 1974 the second count was dismissed and the trial began on January 7, 1974. The trial was completed on January 10, 1974 and, on January 11, 1974, the defendant was sentenced to be executed on May 19, 1974. This appeal followed, during which time defendant's execution has been stayed. We reverse and remand for a new trial.

The defendant alleges ten [10] points as error in the trial proceedings. The points covered will be set out as they appear in appellant's brief.

Point I. Imposition and carrying out of the death penalty in this case, pursuant to N.M.S.A.1953, § 40A–29–2 (1973 Supp.), constitutes cruel and unusual punishment and deprivation of liberty without due process of law, in violation of the eighth and fourteenth amendments to the United States Constitution, and article II, §§ 13 and 18 of the New Mexico Constitution.

Since this case will be reversed and remanded on other grounds we will not make a decision on the constitutionality of the death penalty at this time.

Point II. The exclusion for cause of three veniremen on the grounds of their expressed attitudes toward the death penalty violated appellant's rights under the sixth and fourteenth amendments to the Constitution of the United States.

A. The test of exclusion applied by the court below did not meet the minimum standards required by the Constitution as construed in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

It is true, as the defendant points out, that the court in *Witherspoon* stated:

"Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general

objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected." Id. at 522–23, 88 S.Ct. at 1776.

However, in a footnote to the first sentence quoted above, the court went on to say:

"We repeat, however, that nothing we say today bears upon the power of a State to execute a defendant sentenced to death by a jury from which the only veniremen who were in fact excluded for cause were those who made unmistakably clear (1) that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's *guilt*." Id. at 522 n. 21, 88 S.Ct. at 1777.

The *voir dire* of the three jurors referred to contained the following questions and answers, the first by a Mrs. Cook:

Q. Now, Mrs. Cook, to go a little bit farther, do you feel, at this stage in this case, the trial has not begun, you have not heard any of the evidence in the case, you know none of the facts in the case, or circumstances in this particular case, that it would be impossible for you to vote for conviction in this case, knowing a mandatory death sentence could result?

A. I could not vote guilty.

Q. You could not?

A. No way.

Q. In other words, you would just automatically have to vote against the death penalty in any case because of your feeling about the death penalty?

A. That is right.

Q. Would that mean you would vote not guilty automatically?

A. Yes.

Mrs. Lopez, another prospective juror, said:

Q. Mrs. Lopez, you have already partially answered the question perhaps, but I would like to question you a little more fully. In a proper case where the charges have been proved beyond a reasonable doubt for first degree murder, would you have any qualms or any hesitation about voting for a guilty verdict, knowing that a guilty verdict by the jury would result in a mandatory death penalty?

A. Yes.

Q. Would you feel that because of your various feelings that you just automatically could not go for a guilty verdict knowing that the death penalty could result?

A. (Shakes head affirmatively.)

Q. You feel that under no circumstances could you vote for a guilty verdict knowing that the death penalty could result?

A. No, I could not.

THE COURT: Would you vote not guilty knowing that all of the proof of first degree murder had been offered beyond a reasonable doubt?

A. I don't think I could vote because I don't believe in capital punishment.

THE COURT: It isn't enough, Ladies and Gentlemen of the Jury, not to believe in capital punishment. Our Supreme Court has recently reiterated, our United States Supreme Court, there must be something more than that, and that is in effect this, that it would be impossible under any circumstances, regardless of the proof, that you could vote for a verdict of guilty, knowing that you had nothing to do with the sentence, but knowing that it could carry the death penalty. Now, with that explanation, is your answer still the same?

A. I don't know about voting not guilty, but I still have this hesitation about voting guilty.

Q. Even before this trial is begun, before you have heard any of the evidence, and without knowing any of the facts or circumstances in this case, you feel it would be impossible for you to vote guilty, knowing there was a mandatory death penalty connected with it?

A. I don't think I could.

Another prospective juror remarked as follows:

Q. Mr. Jack, in a proper case in which all of the necessary elements of first degree murder have been proved beyond a reasonable doubt, would you have any hesitation or would you have any difficulty in bringing yourself to vote for a guilty verdict?

A. Yes.

Q. Going one step farther, in a case such as this where you have heard none of the evidence, the trial has not begun yet, you don't know any of the facts or circumstances in the case, would you find it impossible to bring yourself to vote for a conviction of first degree murder knowing that if the whole jury so voted that the defendant could have the death penalty imposed upon him?

A. Yes, sir.

Q. You would have difficulty doing that?

A. Yes, sir.

Q. Would that mean that you would automatically have to vote against the death penalty?

A. Any way, yes, sir.

The testimony reflected above does not violate the philosophy of *Witherspoon*, supra, and we hereby hold that the exclusion of the three veniremen (Cook, Lopez and Jack) did not constitute reversible error.

■ Point II. B. The exclusion of veniremen with ' conscientious scruples against capital punishment deprived appellant of his sixth amendment right to a representative jury.

The defendant had a constitutional right to a jury which might include those who voice general objections to the death penalty or have conscientious or religious scruples against its infliction. The defendant had no constitutional right to a jury which included anyone who felt so strongly about the death penalty that he or she would automatically vote not guilty without weighing the evidence and testimony *impartially*. In fact, the sixth amendment to the U. S. Constitution expressly states that:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury * * *."

The defendant enjoyed a trial by a jury representative of those in the community who could impartially weigh the evidence, despite any reservations which they might have about the death penalty.

Point III. § 40A–29–2, N.M.S.A.1953 (1973 Supp.) is unconstitutional because it violates article IV, § 18 of the New Mexico Constitution.

Section 40A–29–2, N.M.S.A.1953 (1973 Supp.) provides, in part:

"When a defendant has been convicted of a capital·felony the judge shall sentence that person to death."

Appellant contends that this section violates art. IV, § 18 of the New Mexico Constitution, which reads in part:

"No law shall be revised or amended, or the provisions thereof extended by reference to its title only; but each section thereof as revised, amended or extended shall be set out in full."

■ Appellant claims that the statute under consideration is an example of "blind" legislation for the reason that the legislature could not possibly know what capital felonies the death penalty would cover. First, the legislature is presumed to know the laws in existence. *State v. State Highway Commission*, 38 N.M. 482, 35 P.

2d 308 (1934); *State v. Trujillo*, 85 N.M. 208, 510 P.2d 1079 (Ct.App.1973), and others. It is a relatively simple matter to determine that the offense of first degree murder is the only offense to which § 40A–29–2, supra, applies. We have held many times that legislation will not be declared unconstitutional unless the court is satisfied beyond all reasonable doubt that the legislature has gone outside the constitution in enacting it. *Board of Trustees of Town of Las Vegas v. Montano*, 82 N.M. 340, 481 P.2d 702 (1971); *State v. Pacheco*, 81 N.M. 97, 463 P.2d 521 (Ct.App. 1969). We are convinced that the act in question is constitutional despite the fact that it refers to a "capital felony." Finally, it should be pointed out that the title of the act reinstating the death penalty expressly indicated that it was " * * * MAKING THE DEATH PENALTY MANDATORY FOR PERSONS CONVICTED OF FIRST DEGREE MURDER; * * *." Vol. 1, ch. 109 [1973] Laws of N.M. 342–43.

■ Point IV. The statute purporting to re-establish the death penalty, N.M.S.A.1953 § 40A–29–2 (1973 Supp.) is void, because the subject of the bill was not clearly expressed in its title, and the bill embraced more than one subject, contrary to N.M.Const. art. IV, § 16.

In *City of Albuquerque v. Garcia*, 84 N.M. 776, 508 P.2d 585 (1973), we said:

"Article IV, § 16 has often been considered by this court. No useful purpose would be served by reviewing those decisions. We are not disposed to broaden its operation. We approve the guideline stated by the United States Supreme Court in *Montclair v. Ramsdell*, 107 U.S. 147, 2 S.Ct. 391, 27 L.Ed. 431 (1882):

'The objections should be grave, and the conflict between the statute and the constitution palpable, before the judiciary should disregard a legislative enactment upon the sole ground that it embraced more than one object, or if but one object, that it was not sufficiently expressed by the title.'

"We said in *Grant et al. v. State*, 33 N.M. 633, 275 P. 95 (1929):

'A title need not disclose the means and instrumentalities provided in the body of the act for accomplishing its purpose. Provisions reasonably necessary for attaining the object of the act embraced in the title are considered as included in the title. (Citation omitted.)'

"The title need not set forth details of an enactment.

'Particulars are to be found *in the act*, not in the caption.' 1A Sutherland Statutes and Statutory Construction § 18.11 (4th ed. 1972).

"However the details of a statute must be germane or related to the subject matter expressed in the title.

'This should not cause difficulty, for, "when the general purpose of the act is declared, the details provided for the accomplishment of that purpose will be regarded as necessary incidents."' Id."

We conclude that § 40A–29–2, supra, does not violate the principles set down in N.M.Const. art. IV, § 16.

Point V. § 40A–2–1(A)(3) N.M.S.A. 1953 (1972) is unconstitutional because it violates N.M.Const. art. IV, § 18.

Defendant contends that § 40A–2–1(A)(3), supra, violates N.M.Const. art. IV, § 18, because it defines murder in the first degree as all murder perpetrated in the commission of or attempt to commit *any felony*. According to the defendant, the problem with that statute is that, "in order to know the effect of the felony-murder statute it was passing, * * * the legislature had to be presumed to know every felony contained in the laws of New Mexico."

■ We repeat that the legislature is presumed to know the laws in existence, including those defining "felony." We also again stress that we will not declare legislation unconstitutional unless we are satisfied beyond all reasonable doubt that

the legislature has gone beyond the constitution in enacting it. See Point III, supra.

The New Mexico Supreme Court in *State v. Armstrong*, 31 N.M. 220, 260, 243 P. 333, 349 (1924), upon which defendant heavily relies, reasoned that:

"The distinction drawn in this case is very clear. The restriction was construed so as not unreasonably and unnecessarily to hamper the Legislature in its work, but to sustain the Constitution in its plain intent that an act should contain, upon its face, so much that legislators might know, from inspecting it, the true import of that upon which they were to vote, and that citizens might know, from inspecting it in its completed form, of what substantial rights they were thereby vested or divested. * * * "

We conclude that the reference in § 40A–2–1(A)(3), supra, to "any felony" gives sufficient notice of the true import of the statute and of the substantial rights being invested or divested. To require the legislature to enumerate each and every felony would unreasonably and unnecessarily hamper it in its work.

Point VI. Defendant was not provided effective assistance of counsel.

    A.  The selection of the jury.

    B.  The use of the defendant's statement.

    C.  Defendant's theory of the case.

    D.  Specific defenses not raised.

Appellant asserts that the attorney who represented him at trial did not provide him with his constitutionally guaranteed right to effective assistance of counsel, in violation of the fifth, sixth and fourteenth amendments to the U. S. Constitution and N.M.Const. art. II, §§ 14 and 18. Appellant also urges abandonment of the "sham, farce, or mockery of justice" standard for determining effective assistance of counsel. Justice Oman, writing in *State v. Garcia*, 85 N.M. 460, 513 P.2d 394 (1973) stated:

"If in fact the trial attorney, by introducing the portion of the transcript, used

bad tactics or improvident strategy, this did not amount to incompetency or ineffective assistance of counsel. A defendant is denied effective assistance of counsel only if the trial, considered as a whole, is a mockery of justice, a sham, or a farce." (Citations omitted).

While other jurisdictions have seen fit to change standards on this subject, we in New Mexico are not so disposed. It is relatively easy for different counsel on an appealed case to differ on trial tactics used during the trial of a cause. Hindsight is not always better than foresight in the course of litigation from beginning to end. We see no showing whatsoever that trial counsel did not use a "normal and customary degree of skill" under the circumstances of this case. The trial in our opinion did not result in a "sham, farce or mockery of justice."

Point VIII: The court committed reversible error in instructing that the jury could convict if they found that the defendant had committed willful, deliberate and premeditated murder, where defendant was charged only with felony murder.

The indictment charged the defendant with "felony murder and robbery, contrary to Sections 40A–2–1(A)(3) and 40A–16–1, New Mexico Criminal Code." The defendant was charged by count I of the indictment *only* with felony murder. The indictment did not charge the defendant with a "willful, deliberate and premeditated killing" under subsection (A)(1) of § 40A–2–1, N.M.S.A.1953 (2d Repl.Vol. 6, 1972), nor did it charge him with any other type of first degree murder. Furthermore, a "willful, deliberate and premeditated killing" is not a lesser included offense of "felony murder."

Nevertheless, the trial court instructed the jury that they could find the defendant guilty of first degree murder if they found that the murder was perpetrated (1) by any kind of willful, deliberate and premeditated killing; or (2) in the

commission of the felony of robbery. This instruction by the court constitutes reversible error.

The United States Supreme Court in *Stirone v. United States,* 361 U.S. 212, 80 S. Ct. 270 4 L.Ed.2d 252 (1960), held that "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." In support of this rule they took the following quote from the earlier Supreme Court case of *Ex parte Bain,* 121 U.S. 1, 10, 7 S.Ct. 781, 30 L.Ed. 849 (1887):

> "If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the constitution says 'no person shall be held to answer,' may be frittered away until its value is almost destroyed." 361 U.S. 216, 80 S.Ct. 273.

In line with this reasoning we held in *State v. Crump*, 82 N.M. 487, 491, 484 P.2d 329, 333 (1971):

> "If a criminal offense is charged in general terms in an information or indictment, as provided in § 41–6–7, N.M. S.A.1953 (Repl.Vol. 6, 1964), and then is followed by a detailed statement of the facts allegedly constituting the offense, the prosecution is limited to establishing the facts so detailed. * * * (Citations omitted.) This is necessarily so, since a defendant in a criminal case is entitled to know with what he is charged and to be tried solely upon the charges against him. (Citations omitted.)"

It is clear then that the trial court's error leaves us no choice but to reverse and remand. Since the case will be reversed based upon the argument which the appellant made in Point VIII of his brief, it will not be necessary to consider at this time the arguments presented in appellant's Points VII, IX and X.

The cause is reversed and remanded to the district court for a new trial consistent with this opinion

It is so ordered.

OMAN, C. J., and STEPHENSON, J., concur.