Kenneth D. GRIFFIN,
Petitioner-Appellee,

v.

Harvey WINANS, Warden of the New Mexico State Penitentiary, and Attorney General of the State of New Mexico, Respondents-Appellants.

No. 81–1937.

United States Court of Appeals,
Tenth Circuit.

July 28, 1982.

Jeff Bingaman, Atty. Gen., and Eddie Michael Gallegos, Asst. Atty. Gen., of N. M., Santa Fe, N. M., for respondents-appellants.

Reber Boult, Asst. Federal Public Defender, Albuquerque, N. M., for petitioner-appellee.

Before DOYLE, McKAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

The State of New Mexico appeals the district court's grant of habeas corpus relief to Kenneth Griffin[1] because it found that Griffin's state court convictions for rape and aggravated burglary were invalid inasmuch as Griffin had received ineffective assistance of counsel. On appeal the State argues that Griffin's counsel was reasonably effective, and that the district court failed to give proper deference to earlier state court findings to that effect. By agreement of the parties, the appeal was submitted on the briefs.

At trial Griffin was represented by appointed counsel James B. Kelly. Kelly was a retired military officer relatively inexperienced in criminal defense matters, who had been licensed to practice law for about five years. The State acknowledges that Kelly was an alcoholic.

Following Griffin's conviction the public defender took over his representation and filed a motion for a new trial raising several claims, including competency of defense counsel at trial. Before the hearing on the motion Kelly died. The same state court judge who had presided over the trial heard the motion. Several witnesses testified to their observations of Kelly's performance, prior conversations with Kelly, and the testimony they would have given on Griffin's behalf if Kelly had called them as witnesses. The state court judge denied the motion for a new trial. He stated he was

1. The district court ordered New Mexico either to retry Griffin within ninety days or to dis-    charge him.

unsure whether Kelly was drunk during the trial, but he held that Kelly's representation had not created a "sham or mockery" of justice.[2]

Griffin appealed his conviction. In a memorandum opinion the New Mexico Court of Appeals, also applying the "sham and mockery" test, rejected Griffin's claim of ineffective assistance of counsel, stating only the following: "Defendant overlooks action taken by his counsel, and fails to consider the trial as a whole. The selected items on which defendant relies is [sic] far short of showing the trial was a mockery of justice." The New Mexico Supreme Court refused to review Griffin's case.

Because it bears on the deference this appellate court owes to the federal district court's conclusion Griffin received constitu-

tionally ineffective assistance of counsel, we turn first to the question of what deference the federal district court owed to the state courts' contrary conclusions.

■ Griffin's claim of ineffective assistance of counsel is a mixed question of law and fact. See *Washington v. Watkins*, 655 F.2d 1346, 1351–54 (5th Cir. 1981). Unless a habeas petitioner shows one of several specific deficiencies in the state fact-finding process, a federal court entertaining a habeas petition must regard as presumptively correct a state court's findings of fact regarding the claimed constitutional violation. 28 U.S.C. § 2254(d). See *Sumner v. Mata*, —— U.S. ——, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982) (in absence of specific showing, findings of historical facts are presumptively correct; however, the applica-

---

2. The trial judge's conclusions were as follows:

"Mr. Kelly I only had an opportunity to observe on two occasions that I recall in my Court, on two occasions, this case and another case. I don't recall which case it was, but I do recall that he represented somebody.

"Whether or not he was drunk during the time of his representation of Mr. Griffin I could not say. I don't know how he would talk if he was drunk or how he would act if he was sober. I did not see, in his representation, I did not see any bazaar [sic] behavior, any slurring of words or staggering around, the classical kind of things that you would look for in somebody who's under the influence, although people manifest the influence of alcohol in different ways, and I don't know. The influence of alcohol reacts differently on different people. And Mr. Kelly is not here to say yes or no, whether he had anything to drink or not, and I must rely upon the evidence that's before us. And I cannot say that, in fact, he was drunk or sober or had a drink or had a martini with lunch or whatever.

"Was he incompetent in his representation and to such an extent that he prejudiced the defendant and this, as I understand the rest of your arguments, goes not only to his conduct in Court, but his conduct prior to, in the investigation, and did he have an opportunity to investigate all of these facts and not doing that, was that incompetent, and I think the second prong of that is even if he didn't investigate these things, that it creates a sham, a farce, or a mockery of justice and that is the test in New Mexico and I cannot rule that the trial that was conducted before me was a sham, a farce, or a mockery of justice.

"Mr. Griffin was represented by Mr. Kelly and I can't say that that was the finest piece of defense work I have ever seen or the worst piece of defense work. As I say, lawyers come in all varieties and all quandrums [sic] of ability. Whether or not Mr. Griffin has an obligation to bring this to the attention of the Court, I don't think that's the test, whether or not he had an obligation.

"You can put yourself in the hands of an attorney and you assume that he is going to do an adequate job for you. He may not do, and I think the cases speak to, you are entitled to a fair trial, one free from sham, farce or mockery and not entitled to a perfect trial. Certainly there are some things perhaps that we would have done differently or other attorneys might have looked in and said they might have done it differently. I don't know, Mr. Kelly may have done some things which may have, strategies that we are not privy to and I can't second-guess him, but whether or not this particular trial was a sham, a farce, or a mockery, I cannot rule that it was.

"The jury was out for six hours, seven hours, out for a long period of time which I recall that I was somewhat surprised that the jury was out that long, indicating that they took a long time to look at the facts carefully, consider it, and they came back in and they found him guilty. Once again, the fact that he was found guilty doesn't mean that he can complain about it. The test is sham, farce, or mockery, and I'm going to deny the motion for a new trial. I don't feel that the evidence that has been presented to me is sufficient in character and kind that would show that that test has been met."

tion of law to those facts is fully reviewable). In the instant case the state courts made no findings of historical facts that the federal courts must regard as presumptively correct. Equally important, in assessing Griffin's claim the state courts applied the wrong test, the "sham or mockery" test. This Circuit has held that the Sixth Amendment requires "defense counsel [to] exercise the skill, judgment and diligence of a reasonably competent defense attorney." *Dyer v. Crisp*, 613 F.2d 275, 278 (10th Cir.) (en banc), *cert. denied*, 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980).[3]

In a recent opinion the New Mexico Supreme Court has changed its standard, rejecting the sham or mockery test in favor of the test this Circuit uses. *State v. Orona*, 97 N.M. 232, 638 P.2d 1077, 1078 (1982). In the instant case the State alleges the New Mexico state courts reviewed Griffin's claim according to the new and stricter test; the State terms the courts' sham-or-mockery references "merely unfortunate semantics." According to *Orona*, the trend in New Mexico had been to apply the stricter standard while not delineating it as such. 638 P.2d at 1078–79. But at the federal court's evidentiary hearing, the New Mexico judge who conducted the state trial testified spe-

cifically that he had applied the lesser standard. When Griffin's counsel appealed the conviction, he urged the New Mexico appellate court to abandon the "sham or mockery" test in favor of a more stringent standard, but the court declined to do so, making the following statement:

> "A defendant is denied effective assistance of counsel only if the trial, considered as a whole, is a mockery of justice, a sham or a farce. Defendant states that we should disregard this standard, adopted by our Supreme Court. The Supreme Court reaffirmed this standard in *State v. Trivitt*, 89 N.M. 162, 548 P.2d 442 (1976). This Court is governed by precedents of the Supreme Court." (citations omitted)

Therefore, the federal district court acted correctly in conducting its own hearing and reaching its own factual conclusions.

■ The federal district court agreed with Griffin that Kelly's representation was constitutionally inadequate. The court supported its conclusion with specific findings as to Kelly's inadequate pretrial preparation, ineffective conduct of the defense at trial, and intoxication while preparing for trial and during trial.[4] We, of course, re-

---

**3.** The identical situation arose in *Brennan v. Blankenship*, 472 F.Supp. 149 (W.D.Va.1979), *aff'd mem.*, 624 F.2d 1093 (4th Cir. 1980). Because the state courts had applied a "farce or mockery" standard, the district court reassessed the factual issues underlying the claim of ineffective assistance of counsel. *Id.* at 149.

**4.** Pursuant to the district court's directions, a magistrate conducted the evidentiary hearings. The district court adopted the magistrate's proposed findings, which in pertinent part read as follows:

> "7. At the time of petitioner's trial his counsel suffered from the disease of alcoholism, as well as during trial preparation (counsel died shortly after the trial).

> "8. During the preparatory phase petitioner met once with his counsel at the latter's office. The conference lasted approximately one hour, about 80% of which was concerned with irrelevancies. In addition, prior to trial petitioner had two phone conversations with his counsel of very short duration. An examination of what purports to be his counsel's office file reveals inadequate, if any, preparation other than a brief deposition of the victim.

> "9. A review of the pre-trial transcript reveals no activity by petitioner's trial attorney, but rather only that of his previous appointed attorney who was permitted to withdraw some three weeks before the trial. This largely consisted of bond reduction efforts.

> "10. Counsel's pre-trial preparation was constitutionally inadequate.

> "11. A review of the trial taped transcript reveals a wholly ineffective defense counsel. There are numerous examples: a poor voir dire of the jury; permitting the prosecution to ask continuous and blatantly leading questions of its witnesses; an unduly brief, inadequate cross-examination of the victim; allowing the defendant to make a long, rambling account from the witness stand; failing to call any other witnesses for the defense; an inept attempt to recall the victim during the presentation of the 'defense'; allowing the prosecution to present the evidence of a psychologist, to buttress the testimony of the victim, as part of the state's case in chief.

> "12. Petitioner repeatedly asked his counsel to secure on his behalf at least character witnesses. None were even interviewed by his trial counsel, much less called.

view the court's factual conclusions under a clearly erroneous standard.

Substantial evidence supports the district court's conclusions. A corrections worker in the jail testified that she had spoken with Kelly over the telephone, found him incoherent, and thought he was intoxicated. A former probation officer testified that on many occasions she observed Kelly with clients or in the courtrooms, and almost always saw signs that he was intoxicated. The District Public Defender testified that she had removed Kelly's name from a list of available attorneys after a state court judge had complained of Kelly's appearing in court while intoxicated, and further testified that when she discussed with Kelly the filing of a motion for a new trial, he appeared to be intoxicated. Another witness testified that he could smell alcohol on Kelly's breath during the morning of the trial. The district court reviewed tapes of Griffin's trial and found that Kelly's conduct of the voir dire was poor, that he repeatedly allowed the prosecution to ask leading questions, that he failed to call any witnesses for the defense other than Griffin, and that he inadequately cross-examined the victim.

"13. Defense counsel was intoxicated during his preparation for the trial.

"14. Defense counsel was intoxicated during the trial.

"15. The trial took less than one day; the jury deliberated for some seven hours (less a supper interlude), although the evidence was simple to understand. Considerable 'doubt' must have existed even in the presence of a totally inadequate defense.

"16. Petitioner, with new counsel, received an evidentiary hearing in the trial court on the issue presented here upon his motion for a new trial shortly after his conviction.

"17. His trial attorney had died the day before this hearing was held.

"18. His motion for a new trial was denied.

"19. In determining that motion the trial court applied the 'sham, farce, mockery' test, such being the standard applied by New Mexico courts.

"20. Such standard has been declared by the Tenth Circuit to not comply with the United States Constitution.

"21. The standard by which effectiveness of counsel is measured in this Circuit is substantially higher than that used by the New Mexico courts.

Kelly's file contained no evidence of efforts to interview prospective witnesses or otherwise prepare for trial.

The district court's factual findings are not clearly erroneous. Given these factual findings, we agree with the court that counsel was inadequate. Although the State has not argued the shortcomings were harmless error, we think they were not. The State asserts that the jury's seven hours of deliberation indicates that Kelly must have presented a reasonably effective defense. The lengthy deliberation suggests to us that more effective counsel might have tipped the scale.

The district court's grant of habeas corpus relief is hereby AFFIRMED.

"22. The application of the New Mexico standard at the state court hearing denied petitioner due process of law.

"23. The application of the New Mexico standard by the New Mexico reviewing courts in petitioner's appeal denied him due process of law.

"24. The charges petitioner faced were very serious, and the sentence received extremely severe.

"25. Counsel's appointment was, in effect, a mistake. The appointing authority was the public defender who had previously been aware of counsel's inadequacy and did not intend to appoint him in any further cases; that his appointment in petitioner's case was contrary to such intention.

"26. Petitioner's counsel was some sixty years of age, a retired military officer, who at the time of petitioner's trial had been licensed to practice law for some five years, but was relatively inexperienced in criminal defense.

"27. Petitioner did not receive effective assistance of counsel. His conviction was invalid under the Constitution.

"28. Petitioner was severely prejudiced by the ineffectiveness of his counsel.

"29. Petitioner was denied due process of law."