801 P.2d 87

Consuelo GARCIA, As Personal Representative of the Estate of George Garcia, Deceased, Claimant–Appellee,

v.

MT. TAYLOR MILLWORK, INC., and Lumberman's Underwriting Alliance, Respondents–Appellants.

No. 10996.

Court of Appeals of New Mexico.

Nov. 16, 1989.

Martin J. Chavez, Chavez Law Offices, Albuquerque, for claimant-appellee.

David N. Whitham, Butt, Thornton & Baehr, P.C., Albuquerque, for respondents-appellants.

Bradford V. Coryell, Compton, Hickey & Ives, P.A., Santa Fe, Larry Ramirez, Manuel I. Arrieta, Weinbrenner, Richards, Paulowsky, Sandenaw & Ramirez, P.A., Las Cruces, for New Mexico Defense Lawyers Ass'n, amicus curiae.

William H. Carpenter, Carpenter Law Offices, Ltd., Michael B. Browde, Albuquerque, for New Mexico Trial Lawyers Ass'n, amicus curiae.

OPINION

ALARID, Judge.

In this appeal from an order of the Workers' Compensation Division, appellant Mt. Taylor Millwork (employer) challenges the hearing officer's award of death benefits to employee's widow (claimant). Employer raises three issues on appeal: (1) whether the enactment of NMSA 1978, Section 52–5–1 (Repl.Pamp.1987) affects the premises exception to the going and coming rule

adopted in *Dupper v. Liberty Mutual Insurance Co.*, 105 N.M. 503, 734 P.2d 743 (1987); (2) whether the premises exception to NMSA 1978, Section 52–1–19 (Repl. Pamp.1987) (the going and coming rule) was properly applied by the hearing officer in this case; and (3) whether the special hazards exception to the going and coming rule is applicable in New Mexico in light of the language of Section 52–5–1. We affirm the decision of the hearing officer. Due to our disposition of the first two issues, we do not reach issue three.

## FACTS

Employer, a small wood moulding manufacturing plant, began operation in 1965. The only access to the plant requires crossing a double set of railroad tracks owned by the Atchison, Topeka and Santa Fe Railway Company (railroad). Employer's permission to use the crossing for ingress and egress to and from the millwork is found in the terms of three documents, which we discuss later.

On August 3, 1987, George Garcia, an employee of Mt. Taylor Millwork, was proceeding to work. While crossing the railroad tracks, his vehicle was struck by a westbound train. Garcia died in the accident. Claimant brought this action for death benefits under the Workers' Compensation Act (Repl.Pamp.1987 & Cum.Supp. 1989) (the Act). In awarding benefits, the hearing officer found that the agreement giving employer permission to use the crossing for purposes of ingress and egress to the millwork resulted in an easement which was an extension of the employer's premises and that the award of compensation was not barred by the going and coming rule.

## DISCUSSION

1. Whether the enactment of Section 52–5–1 affects the premises exception to the going and coming rule adopted in *Dupper.*

■ Section 52–5–1 provides, in pertinent part:

It is the specific intent of the legislature that benefit claims cases be decided on their merits and that the common law rule of "liberal construction" based on the supposed "remedial" basis of workers' benefits legislation shall not apply in these cases. The workers' benefit system in New Mexico is based on a mutual renunciation of common law rights and defenses by employers and employees alike. Accordingly, the legislature hereby declares that the Workers' Compensation Act * * * [is] not remedial in any sense and [is] not to be given a broad liberal construction in favor of the claimant or employee on the one hand, nor are the rights and interests of the employer to be favored over those of the employee on the other hand.

Section 52–1–19, the going and coming rule, provides that:

[U]nless the context otherwise requires, "injury by accident arising out of and in the course of employment" shall include accidental injuries to workers and death resulting from accidental injury as a result of their employment and while at work in any place where their employer's business requires their presence but shall not include injuries to any worker occurring while on his way to assume the duties of his employment or after leaving such duties, the proximate cause of which is not the employer's negligence.

In *Dupper*, the New Mexico Supreme Court adopted the premises exception to the going and coming rule. Essentially, the court held that an employee going to or coming from his place of work on his employer's premises is within the protection of the Act. *Id.* The supreme court also recognized the long-standing view of workers' compensation legislation as remedial in nature and subject to liberal construction, with all doubts resolved in favor of the worker. *Id.*

Employer argues that the legislature's rejection of the rule of liberal construction in Section 52–5–1 requires that *Dupper* must now be re-evaluated and restricted to the plain language of the going and coming rule as stated in Section 52–1–19. Employer's argument suggests that virtually all workers' compensation decisions rendered

under the rubric of liberal construction are either questionable or inapplicable in light of Section 52–5–1.

Claimant typifies Section 52–5–1 as unconstitutional, blind legislation and suggests the legislature's abandonment of the rule of liberal construction ignores fundamental precepts of separation of powers between the judiciary and the legislature. *See* N.M. Const. art. VI, § 1. Claimant also argues that Section 52–5–1 purports to revise or amend sections of the Act by reference to title only in violation of N.M. Const. art. IV, § 18.

We do not read the legislature's adoption of Section 52–5–1 as an attempt to undermine the workers' compensation jurisprudence developed by the appellate courts of this state as employer suggests. Nor need we decide whether the codification of Section 52–5–1 creates questions of constitutional proportion as claimant argues. Instead, we find Section 52–5–1 a prospectively applicable statement of legislative intent that neither attempts nor purports to retroactively dismantle established workers' compensation case law enunciated under the rule of liberal construction.

■ Statutes are presumed to operate prospectively unless a clear intention on the part of the legislature exists to give a statute retroactive effect. *Psomas v. Psomas*, 99 N.M. 606, 661 P.2d 884 (1982). In light of this principle, we observe that Section 52–5–1 became effective on July 1, 1987, with no indication of an intent to apply the legislation retroactively. *See* Laws 1987, ch. 342, § 30. Section 52–5–1 is absent any language calling for retroactive application. With no expression of legislative intent that Section 52–5–1 apply retroactively, we must conclude the abandonment of liberal construction is intended as a guide for the future and not a wholesale rejection of the developed body of workers' compensation case law relying in whole or in part on the rule of liberal construction. *Cf. Standard Gravure Corp. v. Grabhorn*, 702 S.W.2d 49 (Ky.Ct.App.1985) (legislature's repeal of liberal construction mandate had no effect upon "operating premises" exception to the "going and coming

rule" absent clear legislative intent to abolish the exception).

Finally, we point out that the principle of liberal construction is but one of many tools employed by our appellate courts in construing workers' compensation legislation. Liberal construction has historically been tempered by attention to legislative intent and balanced against sound reason and policy. *Martin v. White Pine Lumber Co.*, 34 N.M. 483, 284 P. 115 (1930). Fundamental fairness to both the workers and employers has long been a guideline. *See Anaya v. New Mexico Steel Erectors, Inc.*, 94 N.M. 370, 610 P.2d 1199 (1980). We reject the notion that by adopting Section 52–5–1, the legislature intended the courts disregard precedent containing any mention of liberal construction or that we engage in dissecting each decided case referring to liberal construction to somehow determine to what degree liberal construction was relied on, and whether that reliance was too great for the case to remain binding precedent. Accordingly, we hold that Section 52–5–1 is a prospective statement of legislative intent which leaves intact the *Dupper* decision.

2. Whether the premises exception to Section 52–1–19, the going and coming rule, was properly applied by the hearing officer in this case.

■ In *Dupper*, the supreme court held "that a workman, while on the employer's premises coming to or going from the actual workplace is in a place where the employee is reasonably expected to be, and that he is engaged in a necessary incident of employment." *Id.* 105 N.M. at 506, 734 P.2d at 746. The court recognized course of employment to include "not only the time for which the employee is actually paid but also a reasonable time during which the employee is necessarily on the employer's premises while passing to or from the place where the work is actually done." *Id.* In this case, the hearing officer concluded that the agreement or contract for an easement over the railroad crossing as sole ingress and egress to employer's facility was an extension of em-

ployer's premises and awarded compensation under the premises exception to the going and coming rule articulated in *Dupper*. Three documents delineate the terms of employer's use of the railroad crossing.

The first document, dated March 19, 1958, is between the railroad and Dow Chemical Company (Dow), allowing Dow to use the crossing for access to its adjacent facility. In pertinent part, the agreement requires Dow to indemnify the railroad should claims arise from Dow's use of the crossing, releases Dow from liability for claims which might result should the railroad permit others to use the crossing in common with Dow, and restricts assignment of the agreement without the written consent of the railroad.

The second document, dated April 19, 1965, is between Dow and employer. The document refers to and incorporates the terms of the 1958 agreement, requires employer to indemnify Dow for any claims arising from employer's use of the crossing, and provides the agreement is subject to the 1958 Dow/railroad agreement.

The third document, dated September 9, 1965, is a consent to sublicense. The document identifies the railroad as licensor, Dow as licensee, and employer as sublicensee. The document incorporates the terms of the 1958 agreement, recognizes the 1965 agreement between Dow and employer, and sets out the railroad's requirements for indemnification for claims arising through use of the crossing by Dow and employer.

Employer contends that Dow and the railroad were granting an easement in gross carrying no more than a right of ingress and egress, and since no actual property right vested in employer, the crossing should not be considered a part of the employer's premises. Claimant tracks the language of the September 1965 document and describes employer's interest as a license. Under the facts of this case, we do not find the question of whether the employer acquired a property right dispositive.

In *Schofield v. Workmen's Compensation Appeal Board*, 39 Pa.Commw. 282, 395 A.2d 328 (1978), the court faced a similar factual situation. The principal means of access to employer's plant was through a railroad crossing over which employer had an easement. Claimant was injured on his way to work when his vehicle collided with a train. The court found that the " '[e]mployer's premises' embraces property that is so connected with an employer's business as to form a component or integral part of it notwithstanding the vesting of title to the property in a third party." *Id.* at 284, 395 A.2d at 329 (citation omitted). *See also* 1 A. Larson, *Workmen's Compensation Law* § 15.43 (1989) (not necessary for employer to own or lease the place where the injury occurred, some kind of right of passage or something equivalent to an easement is sufficient). *Cf. Lovato v. Maxim's Beauty Salon*, 109 N.M. 138, 782 P.2d 391 (Ct.App.1989) (worker sustained a compensable injury under an exception to the going and coming rule in an area where employer exercised no ownership or control).

Here, the railroad crossing was adjacent to employer's plant, and employer had negotiated a right of passage over the crossing. The crossing was also the sole means of ingress and egress to employer's plant. Under these circumstances, we find the crossing sufficiently connected to employer's business as to be an integral part of it. We hold the crossing constitutes a part of employer's premises for purposes of recovery of benefits under the premises exception to the going and coming rule.

In so holding today, we note having taken into account the language of Section 52–5–1. The express legislative intent is that the Workers' Compensation Act is "not to be given a broad liberal construction in favor of the claimant or employee on the one hand, nor are the rights and interests of the employer to be favored over those of the employee on the other hand." *Id.* We read this expression of legislative intent as a call for balanced and evenhanded construction of the Act. Our decision is rendered with that call in mind.

 Claimant requests attorney's fees on appeal pursuant to NMSA 1978, Section 52–1–54(G) (Repl.Pamp.1987). The hearing

officer awarded $12,500 attorney's fees in the proceedings below. As we read Section 52-1-54(G), $12,500 is a cumulative limit on the amount of attorney's fees to be awarded for all legal services relative to a single accidental injury. Claimant argues the limitation raises due process questions but offers no authority to support the proposition. We do not review issues raised which are unsupported by cited authority. *In re Adoption of Doe*, 100 N.M. 764, 676 P.2d 1329 (1984). Since the maximum amount of attorney's fees was awarded below, we are unable to make an additional award on appeal.

The hearing officer's order is affirmed.

IT IS SO ORDERED.

APODACA, J., concurs.

HARTZ, J. (specially concurring).

HARTZ, Judge (specially concurring).

I do not share the majority's view of the applicability of NMSA 1978, Section 52-5-1 (Repl.Pamp.1987). Nevertheless, *Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973) compels this court to follow the New Mexico Supreme Court's interpretation of NMSA 1978, Section 52-1-19 (Repl.Pamp. 1987) in *Dupper v. Liberty Mutual Insurance Co.*, 105 N.M. 503, 734 P.2d 743 (1987). Because I believe that the *Dupper* court would have upheld the application of the premises exception in the circumstances of this case, I concur in the result.

I agree with the majority that statutes ordinarily are presumed to operate prospectively rather than retroactively. I disagree with the majority's interpretation of that maxim. A statute is applied retroactively only if it affects causes of action arising before the effective date of the statute. In *Wilson v. New Mexico Lumber and Timber Co.*, 42 N.M. 438, 81 P.2d 61 (1938) our supreme court wrote:

"As applied to statutes the words 'retroactive' and 'retrospective' may be regarded as synonymous and may broadly be defined as having reference to a state of things existing before the act in question. A retrospective law may be defined more specifically as one 'which is made

to affect acts or transactions occurring before it came into effect, or rights already accrued, and which imparts to them characteristics, or ascribes to them effects, which were not inherent in their nature in the contemplation of the law as it stood at the time of their occurrence.' Black on Interpretation of Laws, 247."

*Id.* at 440, 81 P.2d at 62 (quoting *Ashley v. Brown*, 198 N.C. 369, 372, 151 S.E. 725, 727 (1930)). There is no precedent for the view apparently held by the majority that a statute is retroactive if it overturns a judicial decision predating the effective date of the statute. Because the accident in this case occurred after the effective date of Section 52-5-1, that statutory provision applies.

The majority opinion suggests that the legislature did not intend Section 52-5-1 to cause the judiciary to re-examine its precedents under the Workers' Compensation Act. Yet that may well have been precisely the legislative intent. The pertinent language of Section 52-5-1 first appeared in the House Business and Industry Committee substitute for House Bill 347 on the thirty-fourth day of the 1987 Legislative Session, about three weeks after the *Dupper* decision. In any event, by definition of "effective date," Section 52-5-1 should be applied to any cause of action arising after its effective date. There is nothing peculiar about the judiciary's re-examining its precedents. *Dupper* itself overruled New Mexico precedents. *See, e.g., McDonald v. Artesia Gen. Hosp.*, 73 N.M. 188, 386 P.2d 708 (1963) (worker denied recovery for accident occurring while worker still on employer's premises but while worker was returning home after her work for the employer had ceased). Surely the legislature that enacted Section 52-5-1 did not intend to enshrine all prior decisions of the New Mexico Supreme Court interpreting the Workers' Compensation Act and forbid any future reconsideration of those decisions. The intent of Section 52-5-1 was to provide the courts with legislative guidance in interpreting the Workers' Compensation Act in future decisions, whether those decisions involve matters of first impression or mat-

ters that had been considered in earlier opinions.

Claimant's answer brief contends that Section 52–5–1 is inapplicable because it is unconstitutional. I disagree. The statute does not violate the separation-of-powers doctrine. The same branch of government that enacts the statute can enact definitions, statements of policy, and canons of interpretation as well. An interpretive statute would infringe on the province of the judicial branch only if it attempted to "correct" a prior judicial interpretation by imposing the new interpretation on cases arising before the effective date of the statute. A retroactive statute of that type "would make the legislature a court of last resort." 1A N. Singer, *Sutherland Statutory Construction* § 27.04, at 464 (Sands 4th ed. 1985 rev.) (footnote omitted).

A more difficult issue is the applicability of Article IV, Section 18 of the New Mexico Constitution, which states: "No law shall be revised or amended, or the provisions thereof extended by reference to its title only; but each section thereof as revised, amended or extended shall be set out in full." Although two New Mexico appellate decisions have voided statutes for violating this constitutional provision, both relied on the language prohibiting a law from being "extended": *Yeo v. Tweedy*, 34 N.M. 611, 286 P. 970 (1929) (extending laws relating to appropriation of water); *State v. Armstrong*, 31 N.M. 220, 243 P. 333 (1924) (extending National Prohibition Act). That language is not applicable here. The question is whether Section 52–5–1 constitutes an improper revision or amendment.

There are two reasons that Section 52–5–1 does not violate Article IV, Section 18. First, the constitutional provision should not be applied to interpretive statutes (discussed in 1A N. Singer, *supra*, Chapter 27), as opposed to amendatory statutes (discussed in *id.* Chapter 22). Absurdly burdensome consequences would flow from construing Article IV, Section 18 to require that every bill enacting an interpretive statute must recite in full all the statutes to which it applies. Consider, for example, Chapter 12, Article 2, of the New Mexico Statutes, entitled "Statutory Construction." Among other provisions, that article contains rules of construction which define common terms such as "shall," "person," and "age of majority." NMSA 1978, § 12–2–2 (Repl.Pamp.1988). Certainly a bill enacting such a provision should not have to "set out in full" virtually every statute in New Mexico on the ground that virtually every statute would be "revised" or "amended" by the new rule of construction. "[I]t will not be presumed that the people have intended to limit [the legislature's] power or practice by unreasonable or arbitrary restrictions." *State v. Armstrong*, 31 N.M. at 255, 243 P. at 347. *Tondre v. Garcia*, 45 N.M. 433, 440, 116 P.2d 584, 588 (1941) upheld against a challenge pursuant to Article IV, Section 18, a legislative practice that "is widely prevalent and has been much employed in this state and ought not to be destroyed or curtailed unless clearly unconstitutional."

Second, the provisions of Article IV, Section 18 relating to revisions or amendments were not intended to apply to statutes in the form of Section 52–5–1. Section 22.16 of *Sutherland Statutory Construction, supra,* discusses such constitutional prohibitions. The text states:

In the absence of such limitations an act may be amended by merely referring to its title and providing that certain words, phrases, or provisions shall be inserted, or stricken out, or both. It must only state the place in the prior act where the change should be introduced. Such an amendment requires an examination and comparison of the prior act to understand what change was effected. Such an enactment is properly termed a "blind" amendment.

In the period prior to the adoption of these constitutional provisions, due to the absence of frequent revisions or codifications, this method of amendment resulted in considerable confusion on the state of the law, especially after one act had been amended several times. Moreover, it was often used intentionally to secure the enactment of laws whose effect a large part of the legislature did not understand or contemplate. The con-

stitutional provisions discussed above were adopted to remedy this situation. [Footnotes omitted.]

Language to the same effect in *People ex rel. Drake v. Mahaney,* 13 Mich. 481 (1865) was quoted by our supreme court in *Armstrong,* 31 N.M. at 257–58, 243 P. at 348. The *Armstrong* court appeared to agree with *Mahaney* insofar as it applied constitutional restrictions on revisions or amendments, but distinguished *Mahaney* because the additional language in the New Mexico Constitution relating to *extensions* governed the result in *Armstrong.* Thus, the constitutional restrictions on amendments and revisions apparently are intended to prevent legislation, such as that which still occasionally emanates from the United States Congress, consisting of a series of words or phrases to insert in or delete from an existing statute. No purpose would have been served by requiring 1987 N.M. Laws, Chapter 235, Section 45, which enacted Section 52–5–1, to recite the New Mexico Workers' Compensation Act in its entirety. *See State v. Trivitt,* 89 N.M. 162, 548 P.2d 442 (1976) (Art. IV, § 18 not violated by statute imposing death penalty for every "capital felony" without identifying what crimes are capital felonies; legislature presumed to know the laws in existence). Article IV, Section 18 should not be stretched to wreak havoc on the legislative process. Therefore, Section 52–5–1 is constitutional and can be applied in this case to determine whether recovery is barred by Section 52–1–19.

That task, however, is for the supreme court. This court has the authority to interpret new statutory language; but in the present case we would be interpreting statutory language identical to language already interpreted by the state supreme court. Although using the new lenses provided by Section 52–5–1, we would be looking at the same words in Section 52–1–19. Our supreme court has instructed us that we are "governed by the precedents of this Court[,] *Alexander v. Delgado,* 84 N.M. 717, 507 P.2d 778 (1973) * * * even when a [subsequent] United States Supreme Court decision seems contra." *State v. Manzanares,* 100 N.M. 621, 622, 674 P.2d 511, 512

(1984), *cert. denied,* 471 U.S. 1057, 105 S.Ct. 2123, 85 L.Ed.2d 487, *reh'g denied,* 472 U.S. 1013, 105 S.Ct. 2715, 86 L.Ed.2d 729 (1985). United States Supreme Court precedent is certainly as compelling as a legislative enactment that may alter a canon of statutory construction. Thus, it would be contrary to the direction of our supreme court for this court to overrule the construction of the language of Section 52–1–19 provided by *Dupper.*