886 P.2d 461

Fred ALVAREZ, Plaintiff–Appellee,

v.

Fabian CHAVEZ, Superintendent of Insurance, State of New Mexico, Defendant–Appellant.

No. 14975.

Court of Appeals of New Mexico.

Oct. 5, 1994.

Allen R. Smith, Payne, Hall & Poulson, P.C., Albuquerque, for plaintiff-appellee.

Tom Udall, Atty. Gen., Karl O. Wyler, Asst. Atty. Gen., Santa Fe, for defendant-appellant.

## OPINION

PICKARD, Judge.

This case addresses the issue of whether two statutes which preclude county officers from being licensed as bail bondsmen or from receiving benefits from the bail-bonding business violate the equal protection clauses of the United States and New Mexico Constitutions. The trial court concluded that the statutes do violate equal protection guarantees, and we affirm.

**BACKGROUND**

NMSA 1978, Section 59A–51–4 (Repl. Pamp.1992) provides in pertinent part that:

> Applicants for license as bail bondsman or solicitor under this article must not be law enforcement, adjudication or prosecution officials or their employees, attorneys-at-law, officials authorized to admit to bail or state or county officers....

NMSA 1978, Section 59A–51–13(C) (Repl. Pamp.1992) provides that:

> Law enforcement, adjudication and prosecution officials and their employees, attorneys-at-law, officials authorized to admit to bail, and state and county officers shall not directly or indirectly receive any benefits from the execution of any bail bond.

Alvarez is a bail bondsman. In 1988 Alvarez was elected as an Eddy County Commissioner. Alvarez applied for a renewal of his bail bondsman's license in May 1990. The Superintendent denied his application, citing

the prohibition in Section 59A–51–4 against licensing county officers as bail bondsmen. Alvarez filed an action for declaratory judgment, challenging the constitutionality of the above statutes. Alvarez moved for summary judgment, arguing that the statutes violated the equal protection clauses of both the United States and New Mexico Constitutions. The Superintendent filed a cross-motion for summary judgment, contending that the statutes were rationally related to a legitimate governmental interest and were therefore constitutional.

A hearing was held, and the trial judge found that the parties had stipulated to the facts necessary for the rendering of a decision. The following facts were stipulated to by the parties:

a. Plaintiff is licensed in the business of bail bonds in the State of New Mexico and has been licensed since January 1, 1979.

b. Plaintiff's main occupation and source of income is to write bail bonds in the State of New Mexico.

c. Defendants have recommended nonrenewal and revocation of Plaintiff's license to write bail bonds solely on the basis that Plaintiff is in violation of sections 59A–51–13(C) and 59A–51–4, NMSA 1978 (1992 Repl. Pamph.).

d. The County Commission has the responsibility for establishing and approving the budget for the County. This budget is proposed by the various officers and department heads of the County and is sent to the Commission for approval or disapproval.

e. Section 59A–51–13(C), NMSA 1978 (1992 Repl. Pamph.), does not prohibit city councilors or city officers from writing bail bonds.

f. The district court judges and magistrate judges are paid by the State of New Mexico and their salaries and income are derived from that source. The County Commission has no control over the judges, financially or administratively.

g. The city judges are paid by the various cities that employ these judges and the County Commission of Eddy County has no authority either financially or administratively over these city judges.

h. The office of Eddy County [sheriff] is an elected position and the duly elected sheriff does all the hiring and firing and supervision of the sheriff's department. The sheriff's office budget is reviewed by the County Commission consisting of five commissioners and the budget is either approved or disapproved by that Commission.

i. Mr. A.E. Jackson, who is licensed to issue bail bonds and works for Madrid Bonding Company in Carlsbad, New Mexico, writes bonds in both city and county jails.

j. Mr. A.E. Jackson has been a member of the City Council for the City of Carlsbad, New Mexico, while licensed to issue bail bonds. Mr. Jackson approved in his capacity as a member of the City Council the city budget which includes salaries for the municipal courts, funds for the holding of prisoners held in county jails and salaries of city police officers.

k. The county jails fall under the Sheriff's Department. The County Commission does not have any control or authority over the jail except mere approval or disapproval of the jail budget submitted by the sheriff.

The trial court concluded that the statutes at issue violated equal protection, both because they infringed Alvarez's fundamental right to hold public office and because they were not rationally related to a legitimate state end. The Superintendent appeals.

## DISCUSSION

On appeal, the Superintendent argues that the trial judge's equal protection conclusion was error because he was wrong both in holding that Alvarez has a fundamental right to hold public office and in holding that the statutes are not rationally related to a legitimate state purpose. Alvarez responds by arguing that the statutes violate equal protection in that they preclude him from being a bail bondsman while holding county office, but simultaneously permit other bail bondsmen to hold city office. We believe a review of the current state of equal protection analysis is necessary before a determination of the

constitutionality of the statutes at issue can be made.

### A. Introduction

Both the United States and New Mexico Constitutions provide that no person shall be denied equal protection of the laws. U.S. Const. amend. XIV, § 1; N.M. Const. art. II, § 18. In *Richardson v. Carnegie Library Restaurant, Inc.*, 107 N.M. 688, 763 P.2d 1153 (1988), the New Mexico Supreme Court adopted the multi-level approach to analyzing equal protection challenges to governmental regulation. Noting that "[t]he tests for reviewing equal protection challenges generally are the same under New Mexico and federal law," *id.* at 693, 763 P.2d at 1158 (footnote omitted), the Court relied upon federal cases in articulating three standards of review used in equal protection cases: "strict scrutiny," "heightened scrutiny," and "minimal scrutiny," *id.* at 696–98, 763 P.2d at 1161–63. However, although federal cases were used, the underlying basis for the Court's decision was the New Mexico Constitution. *Id.; see also Trujillo v. City of Albuquerque*, 110 N.M. 621, 623, 629 n. 5, 798 P.2d 571, 573, 579 n. 5 (1990) (discussing level of scrutiny required under the New Mexico Constitution article II, section 18 and noting that federal cases do not control); *State v. Gutierrez*, 116 N.M. 431, 436, 863 P.2d 1052, 1057 (1993) (federal cases are used when interpreting New Mexico Constitution only to the extent that they are persuasive); *Carrillo v. Rostro*, 114 N.M. 607, 617 n. 9, 845 P.2d 130, 140 n. 9 (1992) (same with regard to non-constitutional issues).

In the following sections we discuss each of these standards of review, we determine which standard is applicable in this case, and we then apply that standard to the statutes at issue.

### B. Strict Scrutiny

■ As noted in *Richardson*, equal protection analysis traditionally involved only the strict-scrutiny and minimal-scrutiny standards of review. *Id.* 107 N.M. at 692–93, 763 P.2d at 1157–58. Strict scrutiny is applied to statutes that infringe fundamental rights explicitly or implicitly guaranteed by the Con-

stitution, or that involve certain suspect classes of people who are politically powerless or have historically been subjected to purposeful unequal treatment. *Id.* at 696, 763 P.2d at 1161. A statute reviewed under the strict-scrutiny standard will be upheld only if it is suitably tailored to promote a compelling state interest. *See id.* at 693, 763 P.2d at 1158; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). As applied, almost no statutes which are subjected to strict scrutiny pass constitutional muster. *See* Gerald Gunther, *The Supreme Court, 1971 Term—Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection*, 86 Harv.L.Rev. 1, 8 (1972) (strict scrutiny is strict in theory and fatal in fact).

### C. Traditional Rational Basis

■ At the opposite end of equal protection review is minimal scrutiny or the rational-basis standard. Traditionally, that standard was used to analyze social and economic legislation that affected other than fundamental rights. *Richardson*, 107 N.M. at 693, 697, 763 P.2d at 1158, 1162. The traditional rational-basis standard applies minimal scrutiny to legislation, requiring only that a classification drawn by a statute be rationally related to a legitimate state interest. *Id.* at 693, 763 P.2d at 1158; *City of Cleburne*, 473 U.S. at 440, 105 S.Ct. at 3254; *see also Williamson v. Lee Optical Inc.*, 348 U.S. 483, 488, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). Traditional rational-basis scrutiny is so minimal, in fact, that a party attacking a statute bears the burden of refuting every conceivable basis which might support it, "whether or not the basis has a foundation in the record." *Heller v. Doe*, — U.S. —, —, 113 S.Ct. 2637, 2643, 125 L.Ed.2d 257 (1993). Statutes reviewed under the traditional rational-basis standard are therefore almost always upheld. Thus, as with strict scrutiny, the result in cases applying rational basis is virtually preordained. *See* Gunther, *supra*, at 8 (rational basis applies minimal scrutiny in theory and none in practice).

### D. *Intermediate Scrutiny*

■ Unsatisfied with the rigidity of the traditional two-tier system, the United States Supreme Court established a third level of equal protection review. Falling somewhere between the extremes of strict scrutiny and rational basis, intermediate scrutiny addresses the problem that "certain forms of legislative classification, while not facially invidious, nonetheless give rise to recurring constitutional difficulties[.]" *Plyler v. Doe,* 457 U.S. 202, 217, 102 S.Ct. 2382, 2394–95, 72 L.Ed.2d 786 (1982), *quoted in Richardson,* 107 N.M. at 697, 763 P.2d at 1162. Pursuant to Supreme Court case law, a statute is to be analyzed under intermediate scrutiny if it infringes " 'important', although not necessarily 'fundamental', rights or interests," Laurence H. Tribe, *American Constitutional Law* § 16–33, at 1610 (2d ed. 1988), or if it "involves government's use of sensitive, although not necessarily suspect, criteria of classification," *id.* at 1613. As examples, education is an interest important enough, *see Plyler,* 457 U.S. at 223–24, 102 S.Ct. at 2397–98, and gender and illegitimacy are classes sensitive enough, *see City of Cleburne* 473 U.S. at 440–41, 105 S.Ct. at 3254–55, to warrant intermediate scrutiny. To satisfy intermediate scrutiny, classifications made under a statute must be substantially related to an important governmental interest. *Id.* at 441, 105 S.Ct. at 3255.

In *Richardson,* the New Mexico Supreme Court reviewed the aforementioned trends in federal equal protection analysis and adopted a "heightened, intermediate test" for equal protection review under the state constitution for certain laws. 107 N.M. at 698, 763 P.2d at 1163. At issue in *Richardson* was a statute placing a cap on the damages to be received by tort victims injured through the negligence of tavernkeepers. The *Richardson* Court found that the statute made several classifications which effected a substantial injustice. The Court reasoned that the classifications infringed on "an individual's important interest to be compensated fully for his injuries, especially when . . . they are a result of no fault of his own." *Id.* The Court concluded that this interest was sufficiently important to warrant heightened

scrutiny. The Court also concluded that the class of tort victims affected by the damage cap was sensitive enough to the injustice to warrant heightened scrutiny. *Id.* at 699, 763 P.2d at 1164.

■ We take this opportunity, however, to point out two potentially troubling aspects of the *Richardson* decision. As mentioned, under the federal constitution, a party challenging a statute on equal protection grounds need only show an important interest *or* a sensitive class to be afforded intermediate scrutiny. *See* Tribe, *supra,* at 1610, 1613. The *Richardson* Court, however, stated that intermediate scrutiny is applicable "in those limited circumstances when the class implicated is so sensitive to injustice *and* the rights affected are so substantial and important that they warrant special judicial attention." *Richardson,* 107 N.M. at 698, 763 P.2d at 1163 (emphasis added). This language was subsequently reaffirmed in *Trujillo,* 110 N.M. at 625, 798 P.2d at 575. Indeed, as it has been applied by the Supreme Court, it is apparent that intermediate scrutiny under the state constitution is warranted only after both the interest and the class involved have met the proper criteria. *See Coleman v. United Eng'rs & Constructors, Inc.,* 118 N.M. 47, 51, 878 P.2d 996, 1000 (1994) (because an important interest was not implicated, intermediate scrutiny was not applicable); *Trujillo,* 110 N.M. at 627–28, 798 P.2d at 577–78 (analyzing both interest and class before applying intermediate scrutiny); *Richardson,* 107 N.M. at 698–99, 763 P.2d at 1163–64 (same). *But see Trujillo,* 110 N.M. at 623 n. 2, 798 P.2d at 573 n. 2 (indicating that either an important interest or a suspect class triggers intermediate scrutiny); *Jaramillo v. State,* 111 N.M. 722, 725, 809 P.2d 636, 639 (Ct.App.) (analyzing both interest and class before rejecting intermediate scrutiny, thus implying that either standing alone would trigger intermediate scrutiny), *cert. denied,* 111 N.M. 416, 806 P.2d 65 (1991).

One problem, therefore, is that the New Mexico intermediate scrutiny standard, at least as it has been applied by the Supreme Court, appears to afford less protection under the state constitution to parties challenging statutes on equal protection grounds than

does the federal standard. If it is true that the state constitution affords less protection, there would be little occasion to use it because "[f]ederal law sets a minimum floor of rights below which state courts cannot slip." *See Developments in the Law—The Interpretation of State Constitutional Rights*, 95 Harv.L.Rev. 1324, 1334 (1982). However, as is shown below, we do not confront this problem in the present case because we hold that the statute at issue is unconstitutional under a lower standard of review. *See Richardson*, 107 N.M. at 696, 763 P.2d at 1161 (strict scrutiny not applied because statute constitutionally invalid under lesser, intermediate test). Moreover, the results in New Mexico cases such as *Coleman* do not violate the federal Constitution because it does not appear that federal law would invalidate state statutes of repose under an intermediate level of scrutiny. The classes or interests that have been subjected to intermediate scrutiny under federal law have been narrowly drawn so that they would not include injured tort victims or claims to recover damages. *See City of Cleburne*, 473 U.S. at 441–42, 105 S.Ct. at 3255–56; *Plyler*, 457 U.S. at 224. *See also Coburn by and through Coburn v. Agustin*, 627 F.Supp. 983, 993 (D.Kan.1985) (Supreme Court has used intermediate scrutiny haltingly and not for categories other than gender, alienage, and illegitimacy).

A second problem is whether the floodgates will be opened by the use of heightened scrutiny as that is described in *City of Cleburne*, 473 U.S. at 440–41, 105 S.Ct. at 3254–55, for classes that broadly include tort victims or interests that broadly include the right to recover damages. Adoption of a less stringent standard might therefore be appropriate when the class is merely somewhat sensitive to injustice and the rights affected are important but not so substantial that they warrant the judicial attention that intermediate scrutiny requires. In this connection, we note that the Supreme Court was recently asked to revisit the adoption of intermediate scrutiny for assessing challenges to statutes limiting a claimant's right to " 'full recovery' of damages." While the Court declined the invitation based on law-of-the-case principles, it indicated that one or more members of the Court might be willing to revisit the issue in another case. *Trujillo v. City of Albuquerque*, S.Ct. Nos. 18,296, 19,-118 (N.M. Sept. 6, 1994) [slip op. at 7–9].

## E. Heightened Rational Basis

The most recent development in federal equal protection analysis is an approach that one scholar has termed "rational basis with bite." *See* James A. Kushner, *Substantive Equal Protection: The Rehnquist Court and the Fourth Tier of Judicial Review*, 53 Mo. L.Rev. 423, 458 (1988). Specifically, several cases were decided in the 1980s in which the Court asserted that it was applying the traditional rational-basis test, but which in fact appear to have been decided under some form of heightened judicial scrutiny. For example, in *City of Cleburne*, which involved an equal protection challenge to a zoning ordinance requiring a special use permit for a proposed home for persons who are mentally retarded, a plurality of the Court stated that the lower court "erred in holding mental retardation a quasi-suspect classification calling for a more exacting standard of judicial review than is normally accorded economic and social legislation." 473 U.S. at 442, 105 S.Ct. at 3255. However, in subsequently holding the ordinance invalid for a lack of a rational basis, the Court engaged in an analysis of the factual record supporting the ordinance that was much more searching than traditional rational basis requires. Indeed, as Justice Marshall pointed out in his separate opinion:

the Court's heightened-scrutiny discussion is even more puzzling given that Cleburne's ordinance is invalidated only after being subjected to precisely the sort of probing inquiry associated with heightened scrutiny. To be sure, the Court does not label its handiwork heightened scrutiny, and perhaps the method employed must hereafter be called "second order" rational-basis review rather than "heightened scrutiny." But however labeled, the rational-basis test invoked today is most assuredly not the rational-basis test of *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483 [75 S.Ct. 461, 99 L.Ed. 563] (1955); *Allied Stores of Ohio, Inc. v. Bow-*

*ers,* 358 U.S. 522 [79 S.Ct. 437, 3 L.Ed.2d 480] (1959), and their progeny.

*Id.* at 458, 105 S.Ct. at 3264 (Marshall, J., concurring in the judgment in part and dissenting in part).

The use of this heightened form of the rational-basis standard, which falls somewhere between traditional rational basis and intermediate scrutiny, and which we label "heightened rational basis," has been identified as implicit in several other Supreme Court decisions. *See* Kushner, *supra,* at 457–59 (discussing *Hooper v. Bernalillo County Assessor,* 472 U.S. 612, 618–23, 105 S.Ct. 2862, 2866–69, 86 L.Ed.2d 487 (1985); *Williams v. Vermont,* 472 U.S. 14, 27, 105 S.Ct. 2465, 86 L.Ed.2d 11 (1985); *Metropolitan Life Ins. Co. v. Ward,* 470 U.S. 869, 883, 105 S.Ct. 1676, 1684, 84 L.Ed.2d 751 (1985); *Zobel v. Williams,* 457 U.S. 55, 61–64, 102 S.Ct. 2309, 2313–15, 72 L.Ed.2d 672 (1982)); *see also Attorney Gen. v. Soto–Lopez,* 476 U.S. 898, 912, 106 S.Ct. 2317, 2325–26, 90 L.Ed.2d 899 (1986) (Burger, C.J., concurring in the judgment); *id.* at 916, 106 S.Ct. at 2328 (White, J., concurring in the judgment). *See generally* 3 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law—Substance and Procedure* § 18.3, at 36–41 (2d ed. 1992). Further, at least two federal courts have expressly recognized that the Supreme Court has in fact created this fourth level of equal protection analysis. *See Knutzen v. Eben Ezer Lutheran Housing Center,* 815 F.2d 1343, 1354–55 (10th Cir. 1987) (applying " 'second order' rational basis review"); *Coburn,* 627 F.Supp. at 990 (recognizing "heightened rational basis scrutiny"); *see also Moss v. Clark,* 698 F.Supp. 640, 650 (E.D.Va.1988) (recognizing that the Supreme Court recently "has demonstrated that the rationality standard has teeth") (citing cases), *rev'd,* 886 F.2d 686 (4th Cir.1989). *But see Harbor Ins. Co. v. Groppo,* 544 A.2d 1221, 1225 (Conn.1988) (declining to apply a heightened rational-basis standard until it is formally adopted by the Supreme Court).

A key difference between the traditional and heightened rational-basis standards is that, under certain circumstances, when using the heightened standard, the Supreme Court apparently will examine the record "to determine whether policy decisions are squarely supported by a firm factual foundation." *City of Cleburne,* 473 U.S. at 458, 105 S.Ct. at 3264 (Marshall, C.J., concurring in the judgment in part and dissenting in part); *see id.* at 448, 105 S.Ct. at 3258–59 (Court found no basis in fact in the record for believing that the group home posed any special threat to the city's interests); *see also Knutzen,* 815 F.2d at 1354; *Coburn,* 627 F.Supp. at 990 (under heightened rational-basis scrutiny, there is no place for judicial imagination or hypothesizing).

■ In sum, we believe that heightened rational-basis scrutiny has been used as a fourth level of equal protection review by the United States Supreme Court. Further, we recognize that heightened rational basis has been expressly adopted by lower federal courts. In the interest of clarifying equal protection analysis under the New Mexico Constitution, we believe it would be appropriate to adopt heightened rational-basis review as a fourth level of review under article II, section 18. This fourth level would have achieved the same results in *Richardson* and *Trujillo.*

F. *Heightened Rational Basis is the Applicable Standard of Review in this Case*

As we have noted, the heightened rational-basis standard is one that is implicit in several United States Supreme Court decisions. Because of its implicit nature, the Court has yet to define expressly what criteria trigger the use of the standard. *See* Ellen E. Halfon, Comment, *A Changing Equal Protection Standard? The Supreme Court's Application of a Heightened Rational Basis Test in City of Cleburne v. Cleburne Living Center,* 20 Loy.L.A.L.Rev. 921, 957–58 (1987). However, we read several of the Supreme Court cases applying heightened rational basis as involving legislation that implicated some interest that, although not necessarily fundamental or even important enough to warrant strict or intermediate scrutiny, was nevertheless of such significance as to be afforded more study than the de facto non-scrutiny of traditional rational basis. For example, in *Zobel,* the Court considered an Alaska stat-

ute which, by distributing oil revenues to residents on the basis of their length of residency in the state, implicated the constitutional right to travel. 457 U.S. at 60 n. 6, 102 S.Ct. at 2313 n. 6. The same situation arose in *Hooper*, in which a New Mexico statute granted a tax exemption to veterans who were residents of the state before May 8, 1976, but not to veterans who established residency after that date. 472 U.S. at 616–17, 105 S.Ct. at 2865–66. Both statutes were found to violate equal protection under what the Court asserted was traditional rational basis, but what appears in fact to have been heightened rational basis. *See Hooper*, 472 U.S. at 624, 105 S.Ct. at 2869; *Zobel*, 457 U.S. at 65, 102 S.Ct. at 2315; Kushner, *supra*, at 458–59; *see also Soto–Lopez*, 476 U.S. at 912–16, 106 S.Ct. at 2325–26 (Burger, C.J., and White, J., concurring in the judgment) (apparently employing a heightened rational-basis analysis to invalidate a statute implicating the right to travel).

■ Similarly, we believe the statutes at issue here implicate an interest significant enough to be afforded at least the heightened rational-basis standard of review. Specifically, we note that Sections 59A–51–4 and 59A–51–13(C), which prohibit state and county officials from being bail bondsmen, arguably infringe the ability of a certain class of persons to be candidates for elected office. *See Deibler v. City of Rehoboth Beach*, 790 F.2d 328, 333–37 (3d Cir.1986) (utilizing a higher level of scrutiny in an election case than traditional rational-basis review, but expressly stating that the test is the rational-basis test); *Bolin v. State Dep't of Public Safety*, 313 N.W.2d 381, 382–84 (Minn.1981) (right to run for office is an important right and statute restricting the right is scrutinized for more than rational basis); *see also Stone v. City of Wichita Falls*, 477 F.Supp. 581, 584 (N.D.Tex.1979) (right to run for county commission an important but not fundamental right), *aff'd*, 646 F.2d 1085 (5th Cir.), *cert. denied*, 454 U.S. 1082, 102 S.Ct. 637, 70 L.Ed.2d 616 (1981).

We are guided by the plurality of the Supreme Court's decision in *Clements v. Fashing*, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982). At issue in *Clements* were two Texas statutes limiting a public official's ability to become a candidate for another public office. One of the statutes imposed a two-year "waiting period" on current justices of the peace who wished to run for the legislature, *id.* at 967, 102 S.Ct. at 2845–46, while the other required that certain officeholders resign their positions if they became candidates for any other elected office, *id.* at 970, 102 S.Ct. at 2847. In analyzing the equal protection challenges brought against the statutes, the Court first noted that "the existence of barriers to a candidate's access to the ballot 'does not of itself compel close scrutiny.'" *Id.* at 963, 102 S.Ct. at 2844 (quoting *Bullock v. Carter*, 405 U.S. 134, 143, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972)). The Court then stated that the Texas statutes placed an unsubstantial burden on the candidacies of those affected by them. *Id.* 457 U.S. at 967, 970, 102 S.Ct. at 2845–46, 2847. Finally, the Court concluded that "this sort of insignificant interference with access to the ballot need only rest on a rational predicate in order to survive a challenge under the Equal Protection Clause." *Id.* at 968, 102 S.Ct. at 2846. Applying this rational-basis standard, the Court held that both statutes satisfied equal protection. *Id.* at 966–71, 102 S.Ct. at 2845–48.

■ We believe the implication of the *Clements* decision is that access to the ballot is an interest that under certain circumstances can be afforded some form of heightened scrutiny, such as when a statute acts as a substantial barrier to a person's candidacy. *Cf. McDaniel v. Paty*, 435 U.S. 618, 646, 98 S.Ct. 1322, 1338, 55 L.Ed.2d 593 (1978) (White, J., concurring) (prohibition against ministers serving in the constitutional convention deprives voters of a candidate and violates ministers' right to equal protection). Further, we think that the statutes in this case, which require Alvarez to give up his livelihood if he is to remain in elected office, are indeed substantial barriers to his candidacy. *See Amador v. New Mexico State Bd. of Educ.*, 80 N.M. 336, 337, 455 P.2d 840, 841 (1969) (laws concerning revocation of license to practice vocation are to be strictly construed). Consequently, we hold that the statutes in question are subject to at least

the heightened rational-basis standard of review under the New Mexico Constitution.

### G. *The Statutes at Issue are Invalid Under a Heightened Rational–Basis Analysis*

■ Having determined that, at a minimum, heightened rational basis is to be applied to the statutes at issue, we review the statutes under that standard. As we have noted, a statute will be upheld under traditional rational basis if there is any conceivable basis to support it, even if the basis has no foundation in the record. *Heller*, —— U.S. at ——, 113 S.Ct. at 2643. However, heightened rational-basis review requires more. That is, we are not permitted to imagine or speculate in order to sustain the legislation. Rather, both the trial court and the appellate court must be persuaded that there is an adequate basis in fact or law for the challenged classification. *See City of Cleburne,* 473 U.S. at 448, 105 S.Ct. at 3258–59 (under circumstances of the case, purported rational basis needed to be supported by the record); *see also id.* at 458, 105 S.Ct. at 3264 (Marshall, J., concurring in the judgment in part and dissenting in part). In this case, we are not persuaded that such a basis exists.

■ In this case, the Superintendent proffers as a basis for the statute the need to protect the integrity of the bail-bonding process. We agree that protecting the integrity of the bail-bonding process is a legitimate state goal. *See, e.g., Stephens v. Bonding Ass'n,* 538 S.W.2d 580, 582–83 (Ky.1976); *Kahn v. McCormack,* 99 Wis.2d 382, 299 N.W.2d 279, 283 (Ct.App.1980). However, based on the information available to us, the statutes at issue are both underinclusive and overinclusive and, as a result, the presence of state and county officials in the statutes' prohibitions does not appear to be rationally based. In addition, the statutes contain a number of classifications, and those must be rationally related to the purported purpose of the statutes.

The most significant classification is the presence of county officers but not city officers in the statutes. The Superintendent proffers two reasons why prohibiting county officers from being bail bondsmen improves the integrity of the bail-bonding process. The Superintendent proffers the same reasons to justify imposing the prohibition on only county officers while simultaneously allowing city officers to be bail bondsmen. First, the Superintendent asserts that county officials have access to county jails and, consequently, county officials who are also bail bondsmen could unduly influence the bonding business by referring criminal defendants held in county jail to their own bail-bond practice. Second, the Superintendent asserts that most criminal defendants are taken to county, not city, jails, and therefore the legislature could have rationally believed that prohibiting city officials from being bail bondsmen was not as pressing a concern as prohibiting county officers.

However, the stipulated facts in this case fail to address the issues of whether county officials actually do have access to county jails and whether county jails actually do house more criminal defendants than city jails. In fact, the parties appeared to disagree about these issues at oral argument. Moreover, we were informed at oral argument that there are bail bondsmen, of whom Alvarez is one, whose businesses are limited to city jails or municipal offenses. Thus, to the extent that people like Alvarez are included in the statute, the statute appears overinclusive. Consequently, as the Superintendent conceded at argument, the record in this case simply does not support his asserted rational basis, which has a factual premise.

The Superintendent also contends that the legislature could have reasonably felt that the licensing of city councilors, who are elected in non-partisan elections, as bail bondsmen would be less of a threat to the integrity of the bail-bonding system than the licensing of county commissioners who may be elected under a political party affiliation. However, as with the prior contention, there is no factual basis to suppose that party affiliation constitutes any threat whatsoever, and the rationale that party affiliation may even be relevant is seriously undermined by the fact that party officials are not included in the prohibitions.

In connection with the showing made below, we note that our notice of oral argument questioned whether some form of heightened scrutiny should not be utilized in this case, and the parties, through the cases cited in their briefs, have demonstrated their awareness of the theory of heightened scrutiny. At no time has the Superintendent asked us to remand the case so that a record might be made to support his proffered bases for the statute. Nor has the Superintendent relied on the presence of a factual conflict as precluding summary judgment. Rather, the Superintendent has taken the position that granting judgment for Alvarez was legal error and instead, on the undisputed facts of this case, judgment should have been granted for the Superintendent. Under these circumstances, we accept the case as postured by the parties and decide it accordingly. *See Gonzales v. Public Employees Retirement Bd.*, 114 N.M. 420, 422, 839 P.2d 630, 632 (Ct.App.) (although proceedings in trial court were termed summary judgment, case was actually a bench trial on stipulated facts and was so treated on appeal), *cert. denied*, 114 N.M. 227, 836 P.2d 1248 (1992).

We hold, therefore, that upon the record before us, the presence of the prohibitions against county officers acting as bail bondsmen in Sections 59A–51–4 and 59A–51–13(C) fails to satisfy heightened rational-basis scrutiny, and that that element of the statutes is invalid under the equal protection clause of the New Mexico Constitution.

## CONCLUSION

For the foregoing reasons, the decision of the trial court is affirmed.

IT IS SO ORDERED.

MINZNER, C.J., and BLACK, J., concur.