784 P.2d 24

Jose Damian **ETURRIAGA** and Jacobo **"Jake" Salazar**, Contestants–Appellants,

v.

Cecilia R. **VALDEZ** and Joe B. **Romero**, Contestees–Appellees.

No. 18081.

Supreme Court of New Mexico.

Dec. 19, 1989.

Ida M. Lujan, Santa Fe, for contestants-appellants.

George M. Scarborough, Santa Fe, for contestees-appellees.

## OPINION

RANSOM, Justice.

This is an appeal from the dismissal of an election contest brought by Jose Damian Eturriaga and Jacobo "Jake" Salazar (contestants) against Cecilia R. Valdez and Joe B. Romero (contestees) following a primary election in Rio Arriba County on June 8, 1988. We primarily address a conflict between the Election Code, NMSA 1978, Sections 1-1-1 to 1-22-19 (Repl.Pamp.1985), and the Rules of Civil Procedure promulgated by this Court concerning proceedings to contest the validity of a primary election. *See* SCRA 1986, 1-087.

Additionally, we must decide what relief is available to the contestants in this case when, although we conclude the district court erred in dismissing the action, the general election long since has passed and the challenged candidates have been elected to public office. We conclude that the contest action is now moot and we affirm the dismissal of the action by the district court. However, we will address the merits of the points raised in this appeal as they involve important questions of New Mexico law.

Eturriaga opposed Valdez, and Salazar opposed Romero in the democratic primary for the office of county commissioner. Following the tabulation of ballots, the contestants obtained an order of the district court impounding the ballots pursuant to Section 1-14-9. After certificates of nomination were issued to Valdez and Romero on July 8, 1988, *see* Section 1-13-13(B), the contestants filed a verified complaint of contest with the district court on Monday, August 8, 1988, within the thirty days provided by Section 1-14-3.

The complaint filed with the district court alleged that numerous unlawful irregularities and fraudulent acts had been permitted or committed by election officials and county employees in connection with absentee voting. The contestants asserted that the court should reject the votes of the entire absentee precinct, and then declare that the contestants had won the primary and were entitled to the certificates of nomination.

On August 17, 1988, contestees filed a motion to dismiss the complaint for (1) failure to state a claim upon which relief could be granted because the complaint did not allege that each contestant received more legal votes than the contestee, and (2) failure to timely file notices of contest within fifteen days of the issuance of the certificates of nomination as required by Rule 1–087(B). The contestants filed an amended complaint on August 24, 1988, which was answered the following day. Although not important to our decision, the amended complaint set out the number of votes each candidate received, and showed that the contestants would have the greater number of votes if all of the absentee ballots were to be excluded.

On September 23, the district court granted contestees' motion to dismiss the case. On October 3, contestants filed a motion to reconsider, which was denied on October 17. Thereafter, the contestants filed a notice of appeal with the district court on October 21, and later filed a docketing statement with this Court on November 21. The case was assigned to the Court's general calendar and was submitted for decision after oral argument on May 9, 1989. The general election was held on November 8, 1988, as scheduled, and Valdez and Romero were elected to office. Romero ran unopposed while Valdez faced competition from a write-in candidate only.

■ The district court based its dismissal, in part, upon the lack of any specific allegation in the original complaint that the contestants had received the majority of the legal votes cast. Contestees argue that under *Heth v. Armijo*, 83 N.M. 498, 494 P.2d 160 (1972), a complaint which fails to allege that the contestant received more legal votes than the contestee is not a claim showing that the contestant is entitled to relief. *Heth* should not be read so narrowly. As *Heth* recognized, in 1971 the legislature made the Rules of Civil Procedure applicable to election contests. *Id.* at 499, 494 P.2d at 161. Under these rules, technical forms of pleading are not required. SCRA 1986, 1–008(E)(1). In *Heth* we stated that "the gist of a successful election contest [is] that the contestant 'is legally entitled to the office.'" *Id.* at 499, 494 P.2d at 161 (quoting *Rogers v. Scott*, 35 N.M. 446, 300 P. 441 (1931)). Assertion of that factor was completely lacking in the notice of contest in that case.[1] We stated:

> Viewing the notice of contest as a whole, it contains neither allegation nor inference that contestants were lawfully elected to the offices they seek, or that by reason of the asserted illegality of certain votes, the results of the election would be changed, or even that the contestants are entitled to the offices for which they were candidates.

*Heth*, 83 N.M. at 499, 494 P.2d at 161.

■ *Heth* concluded that in order to state a valid claim the notice of contest should allege that the contestant "received more legal votes than the contestee." *Id.* at 500, 494 P.2d at 162. However, that language should not be construed to be the exclusive manner of stating a contest claim. An allegation that the results of the election were changed by the alleged irregularities, or that the contestant was entitled to the certificate of nomination, is sufficient to state a claim for contest. Either of these assertions can be true only if the contestant received the greater number of the legal votes cast. In the instant case the original complaint contained allegations of numerous specific irregularities in con-

---

1. Under statutes since repealed, *see* NMSA 1953, Repl.Vol. 1 (1970), § 3–14–4 to § 3–14–6, repealed by 1971 N.M. Laws, ch. 210, § 2, the notice of contest in election cases took the place of a conventional civil complaint. *Ferran v. Trujillo*, 50 N.M. 266, 175 P.2d 998 (1946).

nection with the absentee voting. The complaint then alleged the following:

16. Contestants Eturriaga and Salazar, at all times mentioned herein were, and now are, registered voters of Rio Arriba County, Districts Three and Two, respectively, and were candidates duly nominated for the offices of County Commissioner, District Three and District Two, respectively, were duly nominated for those offices at the June 7, 1988 primary election, and are entitled to the nominations thereto. But for the fraudulent acts and misconduct in regard to the absentee voting set forth above, Contestants' nominations to the offices and entitlement would be manifest, and certificates of nomination would properly have been issued to Contestants.

17. By reason of the above, the Court should reject the votes of the entire absentee precinct of Rio Arriba County, New Mexico, or in the alternative, the Court should determine those votes which were cast legally, that Contestants had more legal votes than Contestees and that by reason thereof Contestants Eturriaga and Salazar are entitled to certificates of nomination to the office of County Commissioner of Rio Arriba County, Districts Three and Two, respectively, rather than Contestees.

We are of the opinion that the above statements sufficiently put the ultimate outcome of the election at issue, and did not just contest the legality of certain votes whose exclusion would have no effect on the final result. The contestants are alleged to have been "duly elected," "entitled to the nomination," and "entitled to the certificate of nomination." Further, paragraph seventeen of the complaint does allege "that Contestants had more legal votes than Contestees." A motion to dismiss pursuant to SCRA 1986, 1–012(B)(6) merely tests the legal sufficiency of the claim and not the facts that support it. *Environmental Imp. Div. v. Aguayo,* 99 N.M. 497, 660 P.2d 587 (1983); *McCasland v. Prather,* 92 N.M. 192, 585 P.2d 336 (Ct.

App.1978). The original complaint as filed was sufficient to state a claim for contest.

■ The district court also found the filing of the original complaint to be untimely. At issue is a conflict between the Election Code and this Court's rules concerning initiation of election contest proceedings. Under Section 1–14–3, a party is directed to commence an action to contest an election by filing a verified complaint of contest in the district court no later than thirty days from the issuance of a certificate of nomination or certificate of election to the successful candidate. Under Rule 1–087(B), in order to contest the results of any primary election, notice of contest must be filed and served on the adverse party within fifteen days of the issuance of the certificate of nomination to the successful candidate.

The right of an unsuccessful candidate to contest the results of a primary election of political candidates was created by the legislature in 1943. *See* 1943 N.M.Laws, ch. 86, § 10. Like the right to contest a general election, such a right was unknown at common law and existed only under statutory provisions. *See Dinwiddie v. Board of County Comm'rs,* 103 N.M. 442, 445, 708 P.2d 1043, 1046 (1985), *cert. denied,* 476 U.S. 1117, 106 S.Ct. 1974, 90 L.Ed.2d 658 (1986). However, the 1943 legislation only provided the substantive right of contest in the district court and the right of appeal to this Court. The legislation directed this Court to establish under our rule-making power the necessary procedural framework for the full implementation of the statute. *See* N.M. Const. art. VI, § 3; *Ammerman v. Hubbard Broadcasting, Inc.,* 89 N.M. 307, 551 P.2d 1354 (1976). This Court then promulgated Rule of Civil Procedure 1–087.[2]

When the legislature passed the 1943 primary election contest statute, other statutes extensively regulated the practice and procedure involved in the contest of a general election. *See* NMSA 1941, §§ 56–601

---

**2.** In general, Rule 1–087 establishes certain expedited procedures for the filing of notice of contest, answer, reply, decision and disposition

of any appeal to the Supreme Court. *See* SCRA 1986, 1–087.

to 56–608 (in general, providing specific time periods for the filing of a notice of contest, answer, reply, and the taking of testimony). Contest actions under these and earlier versions of the general election contest statutes were considered to be special statutory proceedings that required strict compliance. *See Bull v. Southwick,* 2 N.M. 321, 365 (1882); *Montoya v. Mc-Manus,* 68 N.M. 381, 385, 362 P.2d 771, 774 (1961).

In 1969 the legislature extensively revised the Election Code and passed legislation covering both primary and general elections. *See* 1969 N.M.Laws, ch. 240. Certain provisions purported to govern the practice and procedure of all contest actions, primary and general, and provided for expedited judicial process. *See Id.* at §§ 328–36. In general, these provisions were similar to earlier ones governing general election contests. *Compare* 1969 N.M. Laws, ch. 240, §§ 328–36 *with* NMSA 1941, §§ 56–602 to 56–610. These legislative changes conflicted in numerous ways with our Rule 1–087 on primary election contests.

In 1971 the Election Code was again amended. Numerous provisions purporting to regulate the practice and procedure of contest actions were repealed. *See* 1971 N.M.Laws, ch. 210, § 2. The Code was amended to provide that the Rules of Civil Procedure would apply to all election contests. *Id.* at § 1. However, the Code retained one provision providing for the initiation of contest proceedings within thirty days of the issuance of a certificate of nomination or election, and substituted the filing of a "verified complaint of contest" for the "notice of contest" required earlier.[3] *Id.* Thus, the conflict with our own rule addressing primary election contests was reduced to a difference between the initial filing period and the form of the notice and filing involved.

At the outset we observe that there is no practical difference between the filing and service of a "notice of election contest" under previous statutes, and the filing and service of a "verified complaint of contest" under the present statutes. It was recognized that the former was merely a designation for our method of contesting elections that served the same function as the filing of a civil complaint. *See Ferran v. Trujillo,* 50 N.M. 266, 175 P.2d 998 (1946). Thus, Rule 1–087 may be read to substitute the words "verified complaint of contest" where "notice of contest" now appears. The only question is whether the action must be commenced in the district court within fifteen or thirty days of the issuance of the certificate of nomination.

The contestants state that Rule 1–087 is an anachronism and should be disregarded in its entirety because the statutory basis for the promulgation of Rule 1–087 was repealed in 1969. We cannot agree that Rule 1–087 has any less force and validity now than earlier. It provides important procedural mechanisms for the timely resolution of primary election contests. Where not in conflict with legislative provisions it remains effective.

When, however, there comes before this Court a conflict between the functions of the legislative and judicial branches of government, "the Court must resolve that conflict in a manner reasonably assuring that powers exercised by one branch do not conflict with the essence of power exercised by the other branch of government." *Southwest Community Health Servs. v. Smith,* 107 N.M. 196, 199, 755 P.2d 40, 43 (1988). It is not the province of this Court to invalidate substantive policy choices made by the legislature. *Id.* Here, the same statute that creates the substantive right to contest a primary election provides

---

3. Section 1–14–3 of the Election Code provides:
 Any action to contest an election shall be commenced by filing of a verified complaint of contest in the district court of the county where either of the parties resides. Such complaint shall be filed no later than thirty days from the issuance of the certificate of nomination or election to the successful candidate. The party instituting such action shall be known as the contestant, and the party against whom the action is instituted shall be known as the contestee. The Rules of Civil Procedure apply to all actions commenced under the provisions of this section.
 NMSA 1978, § 1–14–3 (Repl.Pamp.1985).

a definite time period for commencement of the action. This is a limitation on the substantive right the legislature has created as well as on the remedy afforded any particular aggrieved party. *See Swallows v. City of Albuquerque,* 61 N.M. 265, 266, 298 P.2d 945, 946–47 (1956). We have traditionally viewed legislative rules of election contest as "special proceedings" whose provisions were binding on the district court as well as the parties. *E.g., Vigil v. Pradt,* 5 N.M. 161, 168, 20 P. 795, 798 (1889); *Wood v. Beals,* 29 N.M. 88, 91, 218 P. 354, 355 (1923); *Ratliff v. Wingfield,* 55 N.M. 494, 236 P.2d 725 (1951).

We hold that the thirty-day filing period granted by the legislature represents a substantive right which this Court has no power to reduce. Therefore, the verified complaint of contest was timely filed and its dismissal was error. However, as we have explained earlier, other than paragraph (B), Rule 1–087 remains valid and must be followed.

 Having decided that the dismissal of the contest action was error, both because the complaint stated a legally sufficient claim for contest and because it was timely filed, we must consider what relief is now available to the contestants. We know of no New Mexico cases where the results of a general election have been declared void or of no effect after the successful contest of the primary election that preceded it. The contestants assert that, if successful in their suit on remand, they are entitled to the public office now held by Valdez and Romero under Section 1–14–4. We cannot agree.

Section 1–14–4 of the Election Code, relied on by contestants, provides that:

Judgment shall be rendered in favor of the party for whom a majority of the legal votes shall be proven to have been cast, and shall be to the effect that he is entitled to the office in controversy with all the privileges, powers and emoluments thereto and for his costs. If the contestant prevails he shall have judgment placing him in possession of the contested office and for the emoluments thereto from the beginning of the term for which he was elected and for his costs.

NMSA 1978, § 1–14–4 (Repl.Pamp.1985). We believe, however, that this statute was intended to place the successful contestant of a *general* election into the office to which he is entitled. In the words of the statute, there is no "office in controversy" when the results of a primary is contested. It is the legal entitlement to the *certificate of nomination* which is in controversy. The Election Code has no remedy in a situation such as this, where a primary election contest has not been resolved before the voting in the general election.

The provisions of Rule 1–087 are intended to resolve any controversy over primary election results prior to the general election. We have recognized that this Court's power of superintending control is an appropriate means to timely resolve primary election contests when the right of appeal is inadequate. *See Montoya v. McManus,* 68 N.M. 381, 362 P.2d 771 (1961). The contestants in this case have ignored all provisions of Rule 1–087 and have instead followed the general rules of civil and appellate procedure. In practical terms, this means we have heard this appeal six to seven months after the general election rather than before it. As a general rule, courts have held that a primary election contest becomes moot if not finally determined prior to the balloting in the general election. *See Smith v. Crawford,* 747 S.W.2d 938 (Tex.Ct.App.1988) (notwithstanding good cause or grounds for contest); *Rapier v. Superior Court of Greenlee County,* 97 Ariz. 153, 398 P.2d 112 (1964) (en banc) (recognizing an exception only in cases of voter fraud); *Sasser v. South Carolina Democratic Party,* 277 S.C. 67, 282 S.E.2d 602 (1981); *Harter v. Kehm,* 733 S.W.2d 775 (Mo.Ct.App.1987); *Palmer v. Bond,* 247 Ga. 35, 273 S.E.2d 612 (1981). *But cf. Barber v. Moody,* 229 So.2d 284 (Fla.Ct.App.1969) (contest not moot where candidate ran unopposed in general election and defendants utilized every dilatory tactic available to delay the contest action). We have decided to follow such a course in this case where the general elec-

tion not only has been held, but the contestants also have not availed themselves of the expedited procedures of Rule 1–087, or sought extraordinary relief from this Court. We recognize that when the contested candidate ran unopposed in the general election not all courts have been willing to hold that the primary election contest is moot. *See id.* However, unlike the *Barber* case, the primary responsibility for the untimely consideration of this appeal lies with the contestants and not with those opposing the contest action.

We believe that it is incumbent upon the contestant of a primary election to utilize every available means to resolve the dispute in time to place his name on the ballot in the general election. Consequently, based upon the circumstances of this case, we will not remand the case to the district court for contest proceedings and we find that the action is now moot. The order of the district court is affirmed.

IT IS SO ORDERED.

SOSA, C.J., and BACA, J., concur.