925 P.2d 518

Rochelle MIERAS, Claimant–Appellee and Cross–Appellant,

v.

DYNCORP and National Union Fire Insurance Company, Employer–Insurer–Appellants and Cross–Appellees.

Nos. 16572, 16376.

Court of Appeals of New Mexico.

Aug. 16, 1996.

Certiorari Denied Sept. 26, 1996.

Wendell B. Lane, Overstreet & Lane, P.C., Alamogordo, NM, for Appellee/Cross–Appellant.

William R. Babington, Jr., Christopher W. Nickels, Sager, Curran, Sturges & Tepper, P.C., Las Cruces, NM, for Appellants/Cross–Appellees.

*OPINION*

DONNELLY, Judge.

1. This workers' compensation case involves an appeal and a cross-appeal. Dyncorp and its insurance carrier, National Union Fire Insurance Company (Appellants), argue that: (1) the workers' compensation judge (WCJ) erred in allowing an out-of-state

health care provider, who had never treated the deceased Worker (the decedent), to testify in the workers' compensation hearing on the substantive issue concerning causation between the events leading to the decedent's death and the work performed; and (2) the WCJ's finding that the decedent suffered a fatal myocardial infarction as a natural and direct result of his employment is not supported by substantial evidence.

2. The cross-appeal of decedent's surviving widow (Claimant) challenges the constitutionality of NMSA 1978, Section 52–1–54(I) (Repl.Pamp.1991) (effective Jan. 1, 1991), which establishes a general cap of $12,500 on an award of attorney fees in workers' compensation cases. We affirm the decision of the WCJ as to each of the issues raised in the appeal and cross-appeal.

*FACTS*

3. The decedent was employed by Dyncorp at the Holloman Air Force Base as an aircraft mechanic and structural repair technician. On December 1, 1992, the decedent was assigned to launch and recover three T–38 jet aircraft. The launch and recovery procedure utilized by Dyncorp on the date in question was normally performed by one or two individuals.

4. During the first launch the decedent was assisted by a co-worker. The launch and recovery proceeded at the normal operational pace. During the recovery phase of the second launch, the decedent appeared out of breath. After the recovery, the decedent went to the men's rest room. Approximately thirty minutes later, employees heard a noise inside a bathroom stall. The decedent was found half-dressed on the floor of one of the bathroom stalls. Cardiopulmonary resuscitation was administered to the decedent and he was transferred to Holloman Air Force Base Hospital where he was pronounced dead. Claimant filed a claim for workers' compensation benefits against Appellants.

5. The medical evidence was conflicting as to the cause of the decedent's death. An autopsy was not performed. The Air Force physician who attended the decedent listed the cause of death as possible myocardial ischemia. Two physicians had previously treated the decedent, including Dr. Donald F. Draney and Dr. Jerry W. Miller, a board-certified cardiologist. Appellants hired Dr. Barry Ramo, a board-certified cardiologist, as their medical expert. Claimant's expert, Dr. Murray Mittleman, is a resident of Boston, Massachusetts.

*TIMELINESS OF THE NOTICE OF APPEAL*

6. We initially address a threshold issue directed to the timeliness of Appellants' appeal. Claimant contends that this Court does not have jurisdiction to consider the issues raised in this appeal because Appellants did not properly file their notice of appeal. Appellants originally filed their notice of appeal with the Workers' Compensation Administration (WCA). Although Claimant concedes that a notice of appeal was timely filed with the Clerk of the Court of Appeals, Claimant claims the notice of appeal was deficient because it was the same notice that was originally filed with the WCA and it contained a WCA caption and case number.

7. The present case is distinguishable from those situations where a notice of appeal was filed in the wrong place or was not timely filed. *See Lowe v. Bloom,* 110 N.M. 555, 798 P.2d 156 (1990) (notice of appeal must be timely filed in the correct tribunal); *Singer v. Furr's, Inc.,* 111 N.M. 220, 804 P.2d 411 (Ct.App.1990) (workers' compensation claimant's failure to timely file notice of appeal in Court of Appeals deprived Court of Appeals of jurisdiction over appeal even though claimant filed notice of appeal with Workers' Compensation Division within thirty days of dismissal).

8. Since Appellants did file a notice of appeal with the Clerk of the Court of Appeals within the specified deadline and substantially complied with the provisions of NMRA 1996, 12–601(B), we conclude that this Court has jurisdiction to resolve this appeal. *See id.; Trujillo v. Serrano,* 117 N.M. 273, 276, 871 P.2d 369, 372 (1994) (appellate rules should be construed liberally so as to permit resolution of appeal on merits where such result is consistent with efficient

administration of justice); *Mitchell v. Dona Ana Sav. & Loan Ass'n*, 111 N.M. 257, 258, 804 P.2d 1076, 1077 (1991) (attorney's failure to prosecute appeal in own name did not deprive appellate court of jurisdiction); *Board of County Comm'rs v. Ogden*, 117 N.M. 181, 183, 870 P.2d 143, 145 (Ct.App.) (notice of appeal held sufficient despite technical deficiencies where violations did not affect substantive rights of parties), *cert. denied*, 117 N.M. 215, 870 P.2d 753 (1994); *Brewster v. Cooley & Assocs.*, 116 N.M. 681, 684, 866 P.2d 409, 412 (Ct.App.1993) (workers' compensation claimant did not have to file notice of appeal both with district court and with the WCA; it was enough that claimant served a copy of her notice of appeal on agency).

## ADMISSIBILITY OF EXPERT TESTIMONY

█ 9. Appellants contend that the WCJ erred in allowing Dr. Mittleman, Claimant's medical expert, to provide expert testimony because Dr. Mittleman was not the decedent's treating physician, *see* NMSA 1978, § 52–1–51(C) (Repl.Pamp.1991), (effective Jan. 1, 1991), nor was Dr. Mittleman a licensed New Mexico health care provider. Under NMSA 1978, Section 52–4–1(O) (Cum. Supp.1996), the director of the WCA can approve any person or facility that provides health-related services as a health care provider. In this case, the director approved Dr. Mittleman as a health care provider, subject to "the determination of the [WCJ] concerning [the] admissibility and credibility of [such] testimony." As a result, the director properly left to the WCJ the determination of whether the deposition testimony of Dr. Mittleman should be admitted. Claimant argues that Appellants failed to preserve this issue for appeal and that the decision of the director was not appealable. *See Sun Country Physical Therapy Assocs. v. New Mexico Self-Insurers' Fund*, 121 N.M. 248, 250, 910 P.2d 324, 326 (Ct.App.1995) (order of WCA director awarding attorney fees held not appealable). We agree with Claimant that Appellants failed to raise any issue concerning the admissibility of Dr. Mittleman's testimony below; hence the issue was not preserved. NMRA 1996, 12–216(A); *Cisneros v. Molycorp, Inc.*, 107 N.M. 788, 794, 765 P.2d 761, 767 (Ct.App.) (failure to preserve non-jurisdictional error below waives issue for purposes of appellate review), *cert. denied*, 107 N.M. 785, 765 P.2d 758 (1988).

10. Appellants could have preserved the alleged error by objecting to specific parts of the deposition testimony of Dr. Mittleman. Instead, Appellants' attorney specifically informed the WCJ that he had no objection to the admission of the deposition testimony of Dr. Mittleman.[1] Appellants argue that any objection would have been futile in light of the director's decision, and that the WCJ's willingness to admit the testimony shown by his approval of Claimant's request to amend the discovery order underscores their claim concerning the futility of objecting to the admission of such deposition testimony at trial. Appellants also argue that *Kerr-McGee Nuclear Corp. v. New Mexico Environmental Improvement Board*, 97 N.M. 88, 95, 637 P.2d 38, 45 (Ct.App.), *cert. quashed*, 97 N.M. 242, 638 P.2d 1087 (1981), supports their contention that any further objection on their part would have been in vain or futile. We disagree.

11. The facts of the instant case are distinguishable from the situation in *Kerr-McGee* because a timely objection, if offered during the trial before the WCJ, would have preserved the alleged error pursuant to the New Mexico Workers' Compensation Administration Rules and Regulations 92.3.13 (1992). The order of the WCA director expressly provided that the issue of the admis-

---

1. As shown by the record the following colloquy occurred:

Judge Griego: Mr. Lane are there any depositions you wish me to consider?

Mr. Lane: Yes, your Honor, the deposition of Dr. Murray Mittleman with attached exhibits and the sealed deposition of Dr. Mittleman provided to you this morning.

Judge Griego: Is there any objection to the tender of the deposition of Dr. Mittleman with attachments?

Mr. Babington: No, your Honor.

Judge Griego: Deposition of Dr. Mittleman with attachments will be received.

sibility and credibility of Dr. Mittleman was left to the determination of the WCJ.

■ 12. Appellants also argue that the WCJ had a duty to evaluate the admission of Dr. Mittleman's expert testimony sua sponte under NMRA 1996, 11–702 and that such testimony failed to satisfy the test enunciated in *State v. Alberico*, 116 N.M. 156, 167, 861 P.2d 192, 203 (1993), for the admissibility of scientific evidence. Appellants do not cite any authority for their contention that the WCJ was required to disregard their concession that the deposition testimony could be admitted into evidence without objection. *See Wilburn v. Stewart*, 110 N.M. 268, 272, 794 P.2d 1197, 1201 (1990) ("Issues raised in appellate briefs that are unsupported by cited authority will not be reviewed ... on appeal."). Moreover, a party may not agree to the admission of evidence and thereafter claim error from his or her own action. *See McCauley v. Ray*, 80 N.M. 171, 176, 453 P.2d 192, 197 (1968).

## SUFFICIENCY OF THE EVIDENCE

■ 13. Appellants additionally contend that there is no substantial evidence to support the WCJ's determination that the cause of the decedent's death was a myocardial infarction related to his work with Dyncorp. We review the challenge to the sufficiency of evidence under the whole-record standard of review. *Gomez v. Bernalillo County Clerk's Office*, 118 N.M. 449, 451, 882 P.2d 40, 42 (Ct.App.1994) (court will not disturb findings of WCJ if supported by substantial evidence on record as a whole). Where there is a conflict in the testimony of the medical evidence of the health care providers, it is for the fact finder to reconcile or determine the weight to be given to each such opinion. *See id.* at 453, 882 P.2d at 44; *Lucero v. Los Alamos Constructors, Inc.*, 79 N.M. 789, 791, 450 P.2d 198, 200 (Ct.App. 1969). The causation requirement of NMSA 1978, Section 52–1–28 (Repl.Pamp.1991) may be satisfied by proof that work-related stress was a factor contributing to a worker's myo-

cardial infarction. *See Herman v. Miners' Hosp.*, 111 N.M. 550, 553, 807 P.2d 734, 737 (1991).

14. Based upon data obtained from his study, Dr. Mittleman concluded that an individual who engages in heavy physical activity between one to two times a week, and who then suffers a heart attack within one hour after engaging in activity at a level of MET 6 or higher, there is about a 95% likelihood that the strenuous physical activity was the factor which triggered the heart attack. Dr. Mittleman testified that if the decedent's level of exertion prior to his death was consistent with the description provided to him by a lay witness, then the probability that the physical exertion triggered the heart attack was somewhere between 90% and 95%.

■ 15. Although Appellants presented conflicting expert testimony, it is the duty of the fact finder to resolve conflicts in the evidence. *Gomez*, 118 N.M. at 453, 882 P.2d at 44. The WCJ reviewed the testimony of the expert witnesses, including that of Dr. Mittleman, and heard testimony from several lay witnesses, including one who witnessed the decedent perform his job duties immediately preceding his death. This testimony supports the finding of the WCJ concerning the issues of whether the decedent suffered a myocardial infarction as a natural and direct cause of his employment and whether the decedent's death was a natural and direct result of his employment.

## CONSTITUTIONALITY OF LIMITATION ON ATTORNEY FEES

16. Claimant's cross-appeal challenges the constitutionality of Section 52–1–54(I) of the Workers' Compensation Act, and argues that the statutory limitation of $12,500 on the total award of attorney fees that may be awarded for the legal services rendered by a worker's attorney violates the Equal Protection Clauses of the state and federal constitutions.[2] Specifically, Claimant contends that Section 52–1–54(I) violates equal protection guarantees by creating an impermissible

---

**2.** The Equal Protection Clause of the New Mexico Constitution, Article II, Section 18, provides that "[n]o person shall be ... denied equal protection of the laws." Similarly, the Fourteenth Amendment to the United States Constitution declares that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws."

classification and treating attorney fees awards of claimants with complex highly contested claims differently from claimants with relatively simple claims. The Equal Protection Clauses contained in the United States and the New Mexico Constitutions are substantially identical and have been interpreted as providing the same protections. *Garcia v. Albuquerque Pub. Sch. Bd. of Educ.*, 95 N.M. 391, 393, 622 P.2d 699, 701 (Ct.App.1980), *cert. quashed*, 95 N.M. 426, 622 P.2d 1046 (1981).

17. Claimant's attorney filed her petition for workers' compensation benefits and represented her during the mediation proceedings, pretrial discovery and preparation, trial on the merits, and during post-trial proceedings. As shown by the petition and affidavit of Claimant's attorney filed herein, the attorney expended a total of 124.50 hours in representing Claimant in the contested proceedings below. Claimant's attorney presented evidence indicating that he has extensive experience in workers' compensation law, that his regular billing rate is $100 to $120 per hour, and that the value of the benefits secured by Claimant's attorney is $215,110, plus interest, and costs of $870.63.

18. The WCJ awarded Claimant attorney fees in the amount of $12,500, plus gross receipts tax thereon, for the legal services rendered on her behalf. The award for legal services for pretrial preparation and trial work reached the maximum limit permitted by Section 52–1–54(I), and does not include the value of legal services rendered on Claimant's behalf incident to this appeal.

19. The WCJ's order awarding attorney fees to Claimant for services of her attorney recited in part:

1. That [the WCJ] is constrained by NMSA Section 52–1–54(I) to award attorneys fees not exceeding $12,500.00;

2. But for the limitation imposed by NMSA § 52–1–54(I), the WCJ would award Claimant's counsel attorneys fees exceeding $12,500.00;

3. That Claimant's counsel served on counsel for [Appellants] an Offer of Compensation Order more than five days prior to the trial of this matter, and that Offer was for less than the amount awarded by the Compensation Order, so that the Claimant should be relieved from any responsibility for paying any portion of her fees pursuant to NMSA § 52–1–54(F)(4).

WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that counsel for Claimant is awarded attorneys fees of $12,500.00, plus gross receipts tax, to be paid 100% by [Appellants].

■ 20. The statutory provision, Section 52–1–54(I), limiting the amount of an award of attorney fees in force at the time of the decedent's death, stated in applicable part:

I. *Attorneys' fees including, but not limited to, the costs of paralegal services, legal clerk services and any other related legal services costs on behalf of a claimant or an employer for a single accidental injury claim, including representation before the workers' compensation administration and the courts on appeal, shall not exceed twelve thousand five hundred dollars ($12,500).* This limitation applies whether the claimant or employer has one or more attorneys representing him and applies as a cumulative limitation on compensation for all legal services rendered in all proceedings and other matters directly related to a single accidental injury to a claimant. The workers' compensation judge may exceed the maximum amount stated in this subsection in awarding a reasonable attorneys' fee if he finds that a claimant, an insurer or an employer acted in bad faith with regard to handling the injured worker's claim and the injured worker or employer has suffered economic loss as a result. However, in no case shall this additional amount exceed two thousand five hundred dollars ($2,500). [Emphasis added.]

21. Appellants argue that Claimant lacks standing to assert this issue in her cross-appeal because she has not demonstrated that she has been injured as a result of the statutory limitation on the award of attorney fees. Appellants also argue that Claimant has failed to show any injury arising from such limitation.

■ 22. We believe that Claimant has standing to raise this claim because following

a contested trial on the merits in which she was successful in obtaining an award of death benefits in this workers' compensation proceeding, the WCJ found that the reasonable value of the services of her attorney in obtaining the award at the trial level was in excess of the statutory limitation of $12,500; hence, under such circumstances the statutory cap prohibits any further compensation to Claimant for attorney fees and bars the payment of any additional compensation for attorney fees for defending or sustaining such award on appeal. *See Corn v. New Mexico Educators Fed. Credit Union,* 119 N.M. 199, 202, 889 P.2d 234, 237 (Ct.App.1994) (where claimant is precluded from paying counsel for additional necessary legal services, claimant has standing to assert constitutional claims), *cert. denied,* 119 N.M. 168, 889 P.2d 203 (1995); *see also Pedrazza v. Sid Fleming Contractor, Inc.,* 94 N.M. 59, 62, 607 P.2d 597, 600 (1980) (purpose of Equal Protection Clause is to protect individuals from unreasonable disparate treatment).

23. In *Corn* this Court held that the statutory limit on the award of attorney fees for the value of a claimant's legal services and the absence of any limitation on the legal services rendered on behalf of an employer discouraged representation of workers by counsel and violated constitutional guarantees of equal protection. *Id.* at 207–08, 889 P.2d at 242–43. Although the legislature amended the provisions of Section 52–1–54(I) to remedy the constitutional infirmity addressed in *Corn,* the specific challenge asserted in the present case was not raised in this Court's prior decision and constitutes a matter of first impression. *See Garcia v. Mt. Taylor Millwork, Inc.,* 111 N.M. 17, 20–21, 801 P.2d 87, 90–91 (Ct.App.1989) (declining to address constitutionality of limitation on attorney fees due to failure to brief issue asserted), *cert. quashed,* 110 N.M. 282, 795 P.2d 87 (1990).

*APPLICABLE LEVEL OF SCRUTINY*

24. In analyzing Claimant's equal protection challenge to the constitutionality of the statutory limitation on the amount of her counsel's attorney fees, we first identify the appropriate standard of ju-

dicial review. Our Supreme Court in evaluating a due process or equal protection challenge under the federal or state constitutions to the constitutionality of a statute has traditionally applied one of three standards of review: strict scrutiny, intermediate scrutiny or the rational-basis test. *Marrujo v. New Mexico State Highway Transp. Dep't,* 118 N.M. 753, 757, 887 P.2d 747, 751 (1994); *see also Alvarez v. Chavez,* 118 N.M. 732, 738–39, 886 P.2d 461, 467–68 (Ct.App.1994) (recognizing "heightened rational basis" as standard of review). The applicable standard of review in a specific case is governed by the nature and importance of the individual interests asserted and the relationship between the statutorily-created classification and the importance of the governmental interest involved. *Marrujo,* 118 N.M. at 757, 887 P.2d at 751; *see also Trujillo v. City of Albuquerque,* 110 N.M. 621, 627, 798 P.2d 571, 577 (1990). The tests employed for reviewing equal protection challenges are generally the same under both New Mexico and federal law. *Richardson v. Carnegie Library Restaurant, Inc.,* 107 N.M. 688, 693, 763 P.2d 1153, 1158 (1988).

25. Under the strict scrutiny standard (the highest level of scrutiny), differential treatment will be upheld only when the statute in question advances a compelling state interest and the legislation is necessary to the achievement of that interest. *See Richardson,* 107 N.M. at 693, 763 P.2d at 1158; *see also Kramer v. Union Free Sch. Dist. No. 15,* 395 U.S. 621, 626, 89 S.Ct. 1886, 1889, 23 L.Ed.2d 583 (1969).

26. A second level of review, that of intermediate or heightened standard of review, applies when a due process challenge impinges upon important individual interests or imposes a burden upon a class of persons sufficiently "sensitive" to the harm which is asserted. *Richardson,* 107 N.M. at 693, 763 P.2d at 1158. The intermediate scrutiny or heightened standard of review tests apply to legislation implicating some interest that, although not necessarily fundamental, is nevertheless of such significance as to be afforded more study than the scrutiny applied under the rational basis or minimal scrutiny test. *Alvarez,* 118 N.M. at 738, 886

P.2d at 467. As recently observed by the United States Supreme Court in *United States v. Virginia,* — U.S. —, —, 116 S.Ct. 2264, 2275, 135 L.Ed.2d 735 (1996) under the heightened review standard, "[t]he burden of justification [for upholding an equal protection challenge] is demanding and it rests entirely on the State."

 27. When the equal protection challenge to a statute does not affect a fundamental right or create a suspect classification, nor impinge upon an important individual interest, the applicable standard of review is the rational basis or minimal scrutiny test. Because we conclude that the challenged legislation in the instant case does not implicate a fundamental right or create a suspect classification, we apply the rational basis standard of review. *See Coleman v. United Eng'rs & Constructors, Inc.,* 118 N.M. 47, 51, 878 P.2d 996, 1000 (1994) (holding due process or equal protection challenge to statute of limitations for actions for injuries resulting from defective or unsafe conditions of physical improvements to real property properly evaluated under rational basis test); *Marrujo,* 118 N.M. at 757, 887 P.2d at 751 (evaluating constitutional due process and equal protection challenge to tort claims notice requirement under rational relationship test). *But see Corn,* 119 N.M. at 203–04, 889 P.2d at 238–39 (applying fourth standard of review, i.e., the "heightened rational-basis" test to due process and equal protection challenge to attorney fees limitation on award of attorney fees in workers' compensation proceedings); *Alvarez,* 118 N.M. at 738, 886 P.2d at 467 (applying "heightened rational-basis" standard to equal protection challenge to statutory provisions prohibiting state and county officials from being bail bondsmen or deriving benefits from bail-bonding business).

28. Because we determine the appropriate standard of review in the instant case is the rational-basis test, we need not address the question of whether the "heightened rational-basis" test should continue to be recognized as a fourth level of due process or equal protection review, or whether such standard is in reality a facet of the rational-basis test. *See Alvarez,* 118 N.M. at 738, 886 P.2d at 467 (noting that "heightened rational-basis" standard has never formally been adopted by either the United States Supreme Court or the New Mexico Supreme Court).

 29. Under the rational-basis test, the burden of proof is on the party challenging the validity of the legislation "to demonstrate that the challenged legislation is clearly arbitrary and unreasonable, not just that it is possibly so." *Richardson,* 107 N.M. at 693, 763 P.2d at 1158; *Gallegos v. Homestake Mining Co.,* 97 N.M. 717, 722, 643 P.2d 281, 286 (Ct.App.1982).

 30. The general objective underlying the enactment of workers' compensation legislation "is to ensure that the industry carry the burden of compensating injuries suffered by workers in the course of employment." *Romero v. Shumate Constructors, Inc.,* 119 N.M. 58, 66, 888 P.2d 940, 948 (Ct.App.1994), *overruled on other grounds by Harger v. Structural Servs., Inc.,* 121 N.M. 657, 916 P.2d 1324 (1996). The Act is the result of a legislative balancing involving the subjection of employers to liability without fault for work-related injuries suffered by workers, with a limitation restricting other actions against employers under the exclusivity provisions contained therein. *Johnson Controls World Servs., Inc. v. Barnes,* 115 N.M. 116, 118, 847 P.2d 761, 763 (Ct.App.), *cert. denied,* 115 N.M. 79, 847 P.2d 313 (1993). Correspondingly, the purpose for adopting a limitation of attorney fees is to avoid excessive legal costs so as to not unduly burden employers and their insurers, and to protect an injured worker who without some restriction on an award of attorney fees might have his or her award substantially reduced by legal fees. *Woodson v. Phillips Petroleum Co.,* 102 N.M. 333, 336, 695 P.2d 483, 486 (1985); *see also Corn,* 119 N.M. at 204, 889 P.2d at 239. As observed in *Corn,* in adopting legislation regulating attorney fees in workers' compensation cases, "the legislature has a legitimate interest in reducing the cost of an administrative proceeding, in deterring frivolous claims, and in lowering the cost of litigation for financially disadvantaged litigants." *Id.,* 119 N.M. at 208, 889 P.2d at

243. In enacting legislation designed to fulfill this objective, the means selected must bear a rational relationship to legitimate goals and apply equally to all persons within such class. *Id.* (citing *Murphy v. Commissioner of Dep't of Indus. Accidents,* 415 Mass. 218, 612 N.E.2d 1149, 1156 (1993)).

■ 31. When reviewing a constitutional challenge to the validity of a statute, we indulge in every presumption in favor of the validity of the statute, and the Act will not be declared invalid unless the court is clearly satisfied that the legislature overstepped its constitutional authority in enacting such legislation. *Richardson,* 107 N.M. at 693–95, 763 P.2d at 1158–60.

32. Constitutional challenges to statutory or administrative restrictions on awards of attorney fees based on equal protection grounds have met with little success when considered by the courts in other jurisdictions. *See Rhodes v. Industrial Comm'n,* 125 Idaho 139, 868 P.2d 467, 470 (1993); *Buckler v. Hilt,* 209 Ind. 541, 200 N.E. 219, 221 (1936); *Ayotte v. United Servs., Inc.,* 567 A.2d 430, 434 (Me.1989); *Burris v. Employment Relations Div./Dep't of Labor & Indus.,* 252 Mont. 376, 829 P.2d 639, 641 (1992); *Crosby v. State, Workers Compensation Bd.,* 85 A.D.2d 810, 445 N.Y.S.2d 634, 635 (1981), *aff'd,* 57 N.Y.2d 305, 456 N.Y.S.2d 680, 442 N.E.2d 1191 (1982); *Texas Workers' Compensation Comm'n v. Garcia,* 893 S.W.2d 504, 533 (Tex.1995); *Miller v. IBM,* 659 A.2d 1126, 1128 (Vt.1995); *Seattle Sch. Dist. No. 1 v. Department of Labor & Indus.,* 116 Wash.2d 352, 804 P.2d 621, 627 (1991) (en banc); *see also Hudock v. Virginia State Bar,* 233 Va. 390, 355 S.E.2d 601, 604 (1987). Each of the courts in the above cases has evaluated the due process and equal protection challenges involving limitations on awards of attorney fees in workers' compensation cases under the rational-basis standard of review.

33. Our review of the statutory or regulatory provisions governing the amount of attorney fees authorized in workers' compensation cases in other states indicates that a majority of jurisdictions impose limitations on a claimant's attorney fees by restricting the fee award to a percentage of the worker's total monetary recovery. *See* 4 Arthur Larson, *The Law of Workmen's Compensation,* Table 18B, App. B–18B–1 (Jan. 1994). Every state, except Nevada, places some restriction on the amount of attorney fees that can be recovered in workers' compensation cases. *Id.* A number of states also specifically authorize an additional award of attorney fees for the successful representation of an injured worker on appeal. *See, e.g.,* Alaska Stat. § 23.30.145 (Oct. 1990); Ark.Code Ann. § 11–9–715(a)(3) (Michie Repl.1996); Colo.Rev.Stat. § 8–43–403 (Cum.Supp.1995); Or.Rev.Stat. § 656.388 (1995); S.D.Codified Laws Ann. § 62–7–36 (1993 rev.); Vt.Stat. Ann. tit. 21 § 678 (1987 & Cum.Supp.1995); Wash.Rev.Code § 51.52.130 (1994 ed.). Although a provision authorizing an additional award of reasonable and necessary attorney fees for services on appeal has been adopted by the legislatures of a number of states, the omission of such provision in Section 52–1–54(I) of the New Mexico Workers' Compensation Act does not invalidate the statute on equal protection grounds. *See Heller v. Doe ex rel. Doe,* 509 U.S. 312, 320–21, 113 S.Ct. 2637, 2642–43, 125 L.Ed.2d 257 (1993) (under rational-basis standard of review, statute will not be stricken because in practice it results in some inequality); *cf. Sanchez v. M.M. Sundt Constr. Co.,* 103 N.M. 294, 297, 706 P.2d 158, 161 (Ct.App.1985) (merely because legislation fails to provide for every contingency does not render act unreasonable or arbitrary).

■ 34. In examining the provisions of Section 52–1–54(I) establishing a legislative limit on the amount of attorney fees that may be awarded in workers' compensation cases, we conclude that although the legislation may under certain circumstances preclude any additional award of attorney fees for appellate legal services when the maximum limit has been attained for legal services rendered at the trial level, nevertheless, Claimant has failed to establish that the statute imposing a cap on awards of attorney fees under the circumstances existing here is so devoid of rational support or serves no valid governmental interest as to amount to a mere caprice. *Richardson,* 107 N.M. at 693, 763 P.2d at 1158. Unless the means chosen

by the legislature to implement such legislation is shown to be arbitrary and unreasonable, under the limitation imposed by the state constitutional separation of powers, courts may not inquire into the wisdom of statutory policy or substitute their views regarding the design of workers' compensation legislation. *Gallegos*, 97 N.M. at 722–23, 643 P.2d at 286–87; *see also Eturriaga v. Valdez*, 109 N.M. 205, 209, 784 P.2d 24, 28 (1989) (courts may not substitute their view for substantive policy choices made by legislature). For the reasons discussed above, we hold that Section 52–1–54(I) survives Claimant's challenge, and the statute does not violate the due process or equal protection guarantees of the United States or the New Mexico Constitutions.

## CONCLUSION

35. We affirm the WCJ's compensation order.

36. IT IS SO ORDERED.

ALARID, J., concurs.

HARTZ, J. (specially concurs).

HARTZ, Judge (specially concurring.)

(37) I concur in the result and join in the portion of the majority opinion affirming the decision below as to each of the issues raised in Appellants' appeal. I write separately to explain my reasons for rejecting the constitutional challenge to the fee restriction.

(38) First, because Claimant contends that it is the rights of workers (not attorneys) that are violated by the limitation on attorney's fees, it is worth devoting a moment to put this limitation in the context of other limitations placed on workers by the Workers' Compensation Act. The Act creates an insurance system for workers injured in the course and scope of their employment. As is typical with privately acquired insurance, the benefits are not unlimited. The reason for the limit on benefits is the same as the reason why most people do not obtain the maximum amount of insurance coverage possible—insurance costs money. Although the employer, rather than the worker, pays the premiums for workers' compensation insurance, higher premiums can also affect workers—by reducing the money available for salaries and other employee benefits. In response to concerns about the premiums for workers' compensation insurance, leaders of labor and business have agreed to various modifications of New Mexico law. On the assumption that premiums would drop if costs were lowered, the legislature has tried to reduce costs while maintaining acceptable benefit levels.

(39) Some cost reductions are achieved by placing limits upon the benefits workers can receive. No matter how high the worker's salary, compensation benefits cannot exceed 85% of the average weekly wage in the state. *See* NMSA 1978, § 52–1–41 (Cum. Supp.1995). If the disability results from a primary mental impairment, *see* NMSA 1978, § 52–1–24(B) (Repl.Pamp.1991) (definition of "primary mental impairment"), the worker can receive compensation benefits for no more than 100 weeks. Section 52–1–41(B). The total duration of benefits for other disability cannot exceed 700 weeks, NMSA 1978, § 52–1–47 (Repl.Pamp.1991), except for total disability, *id.;* § 52–1–41(A), which includes only "the permanent and total loss or loss of use of both hands or both arms or both feet or both legs or both eyes or any two of them." NMSA 1978, § 52–1–25(A) (Repl.Pamp.1991). Workers receive no additional benefits for pain and suffering. In short, the worker may receive far less than would be recoverable in a tort action.

(40) The Act attempts to achieve additional cost savings by reducing the transactional costs in assessing what benefits are due a worker. Some provisions, such as the requirement of informal conferences to resolve disputes, *see* NMSA 1978, § 52–5–5 (Cum.Supp.1995), should have no effect on the amount of recovery obtained by the worker. Others, however, could affect the ability to recover benefits. For example, partial disability is determined by a formula that uses objective criteria: the worker's impairment (based on American Medical Association guidelines, § 52–1–24(A)), modified by points deriving from the worker's age, education, and physical capacity. *See* NMSA 1978, § 52–1–26(C) (Repl.Pamp.1991). There

will certainly be cases in which this computation significantly understates the reduction in the worker's capacity to work—the former measure of disability used to set benefits, *see* § 52–1–26 (effective until Jan. 1, 1991). Of perhaps greater practical effect, workers are restricted in their use of potentially favorable expert witnesses. Under NMSA 1978, Section 52–1–51(C) (Repl.Pamp.1991) the only health care providers who may testify concerning the injury are (1) those who have been authorized under the Act to treat the worker or (2) one selected by the workers' compensation judge from an official list of health care providers authorized to conduct independent medical examinations, *see* § 52–1–51(B). (It is not apparent to me how either of the expert witnesses in this case satisfied the statutory requirement, but, as explained in the majority opinion, that issue was not preserved for review on appeal.)

(41) Further savings derive from limitations on what can be paid to those who assist injured workers. No payments whatsoever are permitted any longer for vocational rehabilitation services. *See* NMSA 1978, § 52–1–50 (Repl.Pamp.1991) (effective until Jan. 1, 1991). Maximum fees are set for health care providers, NMSA 1978, § 52–4–5 (Cum.Supp. 1995), expert witnesses, NMSA 1978, § 52–5–4(C) (Repl.Pamp.1991), and attorneys, NMSA 1978, § 52–1–54(I) (Cum.Supp.1995). (Ordinarily, the worker and employer each pay one half of the worker's attorney's fee. Section 52–1–54(J).)

(42) One could speculate regarding which statutory limitations cause the most harm to workers as a practical matter. Given the choice, would workers prefer an increase in benefits, the opportunity to receive care from higher-paid doctors, or the opportunity to pay more for their attorneys? If the limitation on attorney's fees is unconstitutional, then all the other limitations are constitutionally suspect, unless (1) the service of an attorney is, at least to some extent, constitutionally special and (2) restricting the earnings of attorneys harms that special service. In my view, the first condition is met, but not the second one. To the extent that the assistance of an attorney is necessary for the worker to obtain access to the courts, such assistance is entitled to special constitutional protection. But there is no evidence before us that the limitation on attorney's fees in the Workers' Compensation Act deprives any workers of access to the courts. Because Claimant bases her challenge to the Act on an alleged denial of equal protection, I develop my analysis in that context.

(43) The equal protection clauses of the United States and New Mexico Constitutions require us to determine whether a statute improperly divides persons into two classes, treating one class more favorably than the other. Typically, the two classes are identified in the statute in question. For example, in *Corn v. New Mexico Educators Federal Credit Union,* 119 N.M. 199, 889 P.2d 234 (Ct.App.1994), *cert. denied,* 119 N.M. 168, 889 P.2d 203 (1995), we held that the Workers' Compensation Act improperly discriminated between workers and employers with respect to what could be paid in attorney's fees. The two classes—workers and employers—are, of course, distinguished throughout the Act.

(44) In the present case, however, the statutory provision on attorney's fees does not explicitly name any classes that are to be distinguished. All workers and employers are subject to the same limitation of $12,500 for attorney's fees. *See* § 52–1–54(I). Nevertheless, Claimant contends that there is an implicit classification. The classification is based upon whether or not the worker is injured by the statutory limit on attorney's fees. In other words, the two classes are (1) those injured by the statutory limit and (2) those not injured by the limit. Or, to be more precise, the classes are (1) those injured in a specific way by the statutory limit and (2) those not so injured by the limit.

(45) To clarify the issue before us, it is important first to identify the specific type of injury at issue. One must distinguish between (1) the worker's interest in obtaining the best possible legal representation with respect to a worker's compensation claim and (2) the worker's interest in obtaining adequate legal representation. I begin by discussing the first interest.

(46) Cost aside, any litigant would, of course, want to obtain the best possible attorney and have that attorney devote every

bit of time and resources that could possibly assist the litigant in achieving the most favorable result. Undoubtedly, a cap on attorney's fees injures that interest. Gerry Spence is unlikely to take a case if the maximum fee is $12,500. Even the skilled attorneys, such as Claimant's attorney, who take these cases are unlikely to devote many hours to computer legal research.

(47) But the interest in having the best possible legal representation is entitled to very little, if any, constitutional protection. The constitution no more protects a worker's interest in the best possible legal representation than it protects the worker's interest in the best possible medical care or expert witnesses. Even those accused of capital offenses are not constitutionally entitled to the best possible representation. Otherwise, we would need to justify not providing every such defendant with the O.J. Simpson Dream Team. Recognition of a right to the best possible representation would require raising the pay of public defenders to that of senior partners in major law firms and slashing their caseloads at the same time. It would require paying contract attorneys, when the public defender has a conflict, at much higher rates than at present. Likewise, fees for guardians ad litem would need to be increased. *See* NMRA 1996, 10–113(E). The interest in obtaining the best possible legal counsel is a sufficiently uncompelling one that it can be overcome by the simple public interest in reducing costs. Thus, equal-protection objections to limitations on attorney's fees have met with little success; all that has been required is that the limitation be rational. *See Roa v. Lodi Medical Group*, 37 Cal.3d 920, 211 Cal.Rptr. 77, 83–86, 695 P.2d 164, 170–72 (percentage limitations on contingency fees in medical malpractice cases), *appeal dismissed*, 474 U.S. 990, 106 S.Ct. 421, 88 L.Ed.2d 352 (1985); *Khoury v. Carvel Homes South*, 403 So.2d 1043 (Fla.Dist.Ct. App.1981) (percentage limitations on contingency fees in worker's compensation cases), *review denied*, 412 So.2d 467 (Fla.1982); *Rhodes v. Industrial Comm'n*, 125 Idaho 139, 868 P.2d 467, 470–71 (1993) (same); *Bernier v. Burris*, 113 Ill.2d 219, 100 Ill.Dec. 585, 599–601, 497 N.E.2d 763, 777–79 (1986) (percentage limitations on contingency fees in

medical malpractice cases); *Johnson v. St. Vincent Hosp.*, 273 Ind. 374, 404 N.E.2d 585, 602–03 (1980) (same); *Crosby v. State Workers' Compensation Bd.*, 85 A.D.2d 810, 445 N.Y.S.2d 634 (1981) (restrictions on attorney's fees in workers' compensation cases), *aff'd*, 57 N.Y.2d 305, 456 N.Y.S.2d 680, 442 N.E.2d 1191 (1982); *Newton v. Cox*, 878 S.W.2d 105, 109–10 (Tenn.) (percentage limitations on contingency fees in medical malpractice cases), *cert. denied*, 513 U.S. 869, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994); *Texas Workers' Compensation Comm'n v. Garcia*, 893 S.W.2d 504, 533 (Tex.1995) (percentage limitation on contingency fees in workers' compensation cases); *cf. United States Dep't of Labor v. Triplett*, 494 U.S. 715, 110 S.Ct. 1428, 108 L.Ed.2d 701 (1990) (regulation of attorney's fees in black lung cases does not violate due process); *Coleman v. United Eng'rs & Constructors*, 118 N.M. 47, 51, 878 P.2d 996, 1000 (1994) (equal-protection challenge to procedural limitation on recovery is reviewed under rational-basis test); *Miller v. IBM*, 659 A.2d 1126 (Vt.1995) (upholding cap of $35 per hour for attorney's fees in workers' compensation cases); Del.Code Ann. tit. 19, § 2127 (Repl.1995) ($2250 cap on attorney's fees in workers' compensation cases); Ky.Rev.Stat.Ann. § 342.320 (Baldwin 1994) ($15,000 cap on attorney's fees in workers' compensation cases); Minn.Stat.Ann. § 176.081 (West pocket part 1996) ($13,000 cap on attorney's fees in workers' compensation cases); Utah Admin.R. 568–1–7 (1995) ($2500 cap on attorney's fees in workers' compensation cases). *But cf. Carson v. Maurer*, 120 N.H. 925, 424 A.2d 825, 838–39 (1980).

(48) The interest in *adequate* representation is a more significant interest. A statute that deprives someone of the ability to obtain adequate representation in litigation could, in a very real sense, deprive the person of a right of access to the courts. *See Walters v. National Assoc. of Radiation Survivors*, 473 U.S. 305, 334–35, 105 S.Ct. 3180, 3196–97, 87 L.Ed.2d 220 (1985); *Triplett*, 494 U.S. at 721–26, 110 S.Ct. at 1432–35. Consequently, if a statute operates to deny adequate representation to a particular class of persons,

that class may well have been subjected to a discrimination that violates equal protection.

(49) What Claimant fails to do, however, is to identify a class of workers who are denied adequate representation because of the statutory cap on attorney's fees. Her brief on appeal contends that the statutory cap "treats workers with complex and contested claims differently from workers whose claims are relatively simple or whose claims can be settled." Yet, she presents no evidence that workers with complex, contested claims (or even a subclass of such workers) are unable to obtain adequate representation, nor does she make a persuasive argument why that should be so. The question is whether as a result of the statutory cap there are workers' compensation cases which no qualified attorney will take. In this regard, it is important to recognize that the cap would cause an attorney to refuse a case only if the attorney could tell at the outset that it would likely require more work than could be adequately compensated under the cap. Once an attorney agrees to represent a client, knowing that the statute sets a cap on the fee that can be charged, the attorney owes the client diligent efforts and cannot withdraw from the representation on the ground that the work required turned out to exceed what was anticipated. Claimant has not shown that there exist cases that at the outset are clearly so complex as to cause all qualified attorneys to reject them.

(50) To be sure, there are cases for which the efforts of the worker's attorney, compensated at normal hourly rates, would justify a fee greater than the statutory cap. The workers' compensation judge found this to be such a case (although it is likely that much of the time of Claimant's attorney related to testimony by expert witnesses who apparently were not authorized to testify under the Workers' Compensation Act, see § 52–1–51(C)). But we know of such cases only in hindsight. According to statistics relied upon by this Court in Corn, a reasonable attorney's fee exceeds the statutory cap in only one out of 500 cases. See Corn, 119 N.M. at 208, 889 P.2d at 243. Given that attorneys representing workers take the risk that they will receive no fee whatsoever if they do not obtain increased benefits for the worker, it would not be surprising if those same attorneys are willing to accept the risk that the statutory cap will result in their time on a case being compensated at less than their ordinary rates. At the least, there is no reason for us to presume that there is a class of workers' compensation cases for which workers cannot obtain adequate representation. In the absence of such a class, Claimant's equal-protection argument must fail. Of course, if the existence of such a class of cases could be demonstrated at an evidentiary hearing, the equal-protection claim would need to be reexamined.

(51) The above discussion relates to the representation of the worker for the case as a whole. One could argue, however, that the cap has a particular impact on representation on appeal. It may appear that a worker will receive inadequate representation on appeal if the attorney has already been awarded the statutory maximum fee for work before the Workers' Compensation Administration.

(52) But this concern is valid only if the attorney violates the ethical obligation to provide the client with adequate representation on appeal. As already stated, an attorney takes a workers' compensation case with notice that there is a statutory cap on the fee and accepts the risk that compensation could be below the attorney's customary hourly rate if substantial additional work is required either at the trial level or on appeal. The possibility of appellate duties is merely one of several contingencies that an attorney must take into consideration in deciding whether to represent a worker. Moreover, often the attorney has a financial self-interest in the appeal. If the worker is the appellee, an unsuccessful defense of the award to the worker could result in reduction of the attorney's fee on remand. If the appeal is on behalf of the worker, the worker's attorney may obtain a larger fee as a result of the appeal. Thus, again, there is no reason to presume, and there is no evidence to establish, that the statutory cap prevents any class of workers from obtaining adequate representation for their claims, either at the level of the Workers' Compensation Administration or on appeal.

(53) Finally, I add a few words to emphasize a proposition that too many may overlook. To affirm the constitutionality of a statute is not to approve it on policy grounds. Unfortunately, or fortunately, judges are not ex officio members of the legislature. We should refrain from imposing our views of policy under the banner of constitutional principles.